1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
ltfisher@bursor.com
Neal J. Deckant (State Bar No. 322946)
ndeckant@bursor.com
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Tel: (925) 300-4455
Fax: (925) 407-2700

*Attorneys for Applicant*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DRICKEY JACKSON,<br><br>                              Applicant,<br><br>     v.<br><br>For an order compelling META PLATFORMS, INC. to produce documents pursuant to a subpoena *duces tecum*,<br><br>                              Respondent. | CASE NO. _____<br><br>**DECLARATION OF NEAL J. DECKANT IN SUPPORT OF APPLICANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM META PLATFORMS, INC. PURSUANT TO A SUBPOENA *DUCES TECUM***<br><br>Date:<br>Time:  To Be Set<br>Courtroom:  To Be Determined |

**Related Case:**
*Jackson v. Amazon, Inc.*, No. 3:20-cv-02365-WQH-BGS (S.D. Cal.) (Hayes, J.)

---

DECLARATION OF NEAL J. DECKANT

**DECLARATION OF NEAL J. DECKANT**

I, Neal J. Deckant, declare as follows:

       1.     I am an attorney at law licensed to practice in the State of California.  I am an attorney with Bursor & Fisher, P.A., and attorney for Plaintiff in the matter captioned *Jackson v. Amazon.com, Inc.*, No. 3:20-cv-02365-WQH-BGS (S.D. Cal.) (Hayes, J)  I make this declaration in support of Applicant's Motion To Compel Production Of Documents From Meta Platforms, Inc. Pursuant To A Subpoena *Duces Tecum*.  I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, could and would competently testify thereto under oath.

       2.     In accordance with ongoing discovery, Applicant issued a subpoena *duces tecum* on Meta Platforms, Inc. ("Meta"), the platform on which Applicant's and class members' privacy rights were violated, seeking documents and information regarding certain Facebook groups at issue.  Applicant alleges that Amazon wiretapped the electronic communications of Amazon Flex Drivers' closed Facebook groups.  Applicant estimates that Amazon monitored approximately forty-three closed Facebook groups.

       3.     Meta has refused to produce the requested data and responded with a generic objection.

       4.     In light of the parties' inability to reach any agreement, further conferences to resolve the impasse before the hearing on the instant motion to compel would be futile.  Moreover, Meta issued a "boilerplate" objection via e-mail that did not have the name or contact information of any individual who could be contacted for further information – it was simply a generalized objection email signed "Meta Platforms, Inc." with no name, address, or phone number.

       5.     Attached hereto as **Exhibit A** is a true and correct copy of the operative Class Action Complaint in the matter captioned *Jackson v. Amazon.com, Inc.*, No. 3:20-cv-02365-WQH-BGS (S.D. Cal.) (Hayes, J.).

       6.     Attached hereto as **Exhibit B** is a true and correct copy of the subpoena *duces tecum* issued to Meta on August 23, 2023.

7.      Attached hereto as **Exhibit C** is a true and correct copy of the proof of service for the subpoena *duces tecum*, showing that it was served on Meta on August 23, 2023.

8.      Attached hereto as **Exhibit D** is a true and correct copy of Meta's response objecting to the subpoena *duces tecum* dated August 28, 2023.

9.      Attached hereto as **Exhibit E** is a true and correct copy of Meta's privacy policy.

10.     Attached hereto as **Exhibit F** is a true and correct copy of the Protective Order entered in the *Jackson* matter.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.  Executed on September 8, 2023 at Walnut Creek, California.

*/s/ Neal J. Deckant*
Neal J. Deckant

**EXHIBIT A**

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
      ndeckant@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DRICKEY JACKSON, individually and on behalf of all others similarly situated,<br><br>           Plaintiff,<br><br>     v.<br><br>AMAZON.COM, INC.,<br><br>           Defendant. | Case No. 3:20-cv-02365-WQH-BGS<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1    Plaintiff Drickey Jackson ("Plaintiff"), individually and on behalf of himself

2  and all others similarly situated, by and through his attorneys, makes the following

3  allegations pursuant to the investigation of his counsel and based upon information

4  and belief, except as to allegations specifically pertaining to himself and his counsel,

5  which are based on personal knowledge.

6                          **NATURE OF THE ACTION**

7    1.    This is a class action suit brought against Defendant Amazon.com, Inc.

8  ("Amazon" or "Defendant") for wiretapping the electronic communications of

9  Amazon Flex Drivers' ("Flex Drivers") closed Facebook groups.  The wiretaps are

10  used by Defendant to secretly observe and monitor Flex Drivers' electronic

11  communications and confidential postings in their closed Facebook groups, through

12  the use of monitoring tools, automated software, and dedicated employees with

13  backgrounds in signals intelligence and communications intelligence.  As such,

14  Defendant has violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal

15  Code § 631 and 635, intruded upon the seclusion of Plaintiff and Class members,

16  violated Plaintiff and Class members' privacy rights under the California

17  Constitution, violated the Federal Wiretap Act, 18 U.S.C. 2510, *et seq.*, and violated

18  the Stored Communications Act, 18 U.S.C. 2701, *et seq.*

19    2.    Mr. Jackson is an Amazon Flex Driver.  He communicated with other

20  Flex Drivers in closed Facebook groups that were monitored by Defendant.  Amazon

21  monitored these closed groups secretly and gathered information about planned

22  strikes or protests, unionizing efforts, pay, benefits, deliveries, warehouse conditions,

23  driving conditions, and whether workers had been approached by researchers

24  examining Amazon's workforce.  Amazon conducted this monitoring by hiring

25  employees and investigators with backgrounds in intelligence, particularly signals

26  intelligence ("SIGINT") and communications intelligence ("COMINT"), who

27  deployed automated tools and monitoring software as part of their SIGINT and

28  COMINT duties on behalf of Amazon.

---

1

3.     Plaintiff brings this action on behalf of himself and a class of all persons whose electronic communications through the closed Facebook groups were monitored by Defendant's wiretaps.

## THE PARTIES

4.     Plaintiff Drickey Jackson is a resident of San Diego, California with an intent to remain there, and is therefore a domiciliary of California.  Throughout 2020, prior to the filing of this lawsuit, Mr. Jackson communicated with Flex Drivers through closed Facebook groups while they were being monitored by Amazon.  Mr. Jackson was in San Diego when he used the closed Facebook groups subject to Amazon's monitoring.  During his use of the Facebook groups, Mr. Jackson's electronic communications, including communications about planned strikes or protests, pay, benefits, deliveries, driving and warehouse conditions, unionizing efforts, and whether workers had been approached by researchers examining Amazon's workforce, were intercepted in real time and were disclosed through Amazon's wiretap.  Mr. Jackson was unaware at the time that his electronic communications, including the information described above, were being intercepted in real-time and would be disclosed to Amazon, nor did Mr. Jackson consent to the same.

5.     Defendant Amazon is a Delaware Corporation with its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109.

6.     Amazon engages in the retail sale of consumer products and subscriptions and make the majority of their sales through its online platform, Amazon.com.

7.     Amazon does business throughout California and the entire United States.

8.     In addition to its own drivers, Amazon contracts out to over 800 service delivery partners.  These contract drivers are referred to as Flex Drivers.

9.     Amazon discourages their employees from unionizing.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is a citizen of a state different from Defendant.

11.    This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the laws and benefits of doing business in this State, and Plaintiff's claims arise out of each of Defendant's forum-related activities. Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this District.

12.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

## STATEMENT OF FACTS

### Overview Of The Wiretaps

13.    Amazon Flex is a program by which Amazon pays regular people to deliver packages.

14.    Amazon Flex drivers have complained about a myriad of issues surrounding their employment, including a lack of job security, little to no benefits, and low pay.

15.    In order to discuss these issues with colleagues, many Flex Drivers, including Plaintiff, formed or joined private Facebook groups.

16.    The idea of these Facebook groups is that they are only populated with Flex Drivers, not other persons, and certainly not employees or personnel of Defendant.

17.    Unbeknownst to Flex Drivers, however, Defendant has been secretly monitoring and wiretapping these closed Facebook groups.

CASE NO. 3:20-CV-02365-WQH-BGS

18.     An Amazon document called "social media monitoring" lists forty-three closed Facebook groups and pages run by Flex Drivers in different cities in the United States that Amazon monitors.  The document states that "[t]he following social forums mentioned in the table are to be monitored during the Social media process."

19.     Defendant confirmed that this document came from a sophisticated and secret program that surveils dozens of private Facebook groups set up by workers. Defendant later confirmed that this program is part of its Orwellian-sounding Advocacy Operations Social Listening Team ("Advocacy Operations").  Amazon recruits members of the Advocacy Operations from individuals who have backgrounds and experience in SIGINT and COMINT.  The purpose of this program is to monitor information about planned strikes or protests, unionizing efforts, warehouse conditions, pay, benefits, and whether workers have been approached by researchers examining Amazon's workforce.

20.     Posts are monitored and/or intercepted in real time.  Advocacy Operations describes how it captures relevant information from closed Facebook groups (included but not limited to the groups listed below) using automated monitoring tools:

**AO / Social Media Monitoring / Source Access DOC**
The following social forums mentioned in the table are to be monitored during the Social media process.

| GROUPS | COUNTRY/PLATFORM |
| --- | --- |
| Amazon Flex Drivers (USA) | |
| Amazon Workers & Independent Amazon Flex Drivers Experience Group USA | |
| Amazon Flex Drivers | |
| Amazon Flex APEX Drivers Nationwide | |
| Amazon Flex Las Vegas | |
| Amazon Flex Drivers of Richmond, VA | |
| Amazon Flex Drivers Los Angeles | |
| Official Amazon Flex Drivers of Portland | |

| STEP | WHAT TO DO |
|------|-----------|
| 1. Capture the posts mentioned in the Shift handover mail. | Open the shift handover mail and list down the posts which requires additional monitoring/investigation/reporting. |
| 2. Allot the existing groups, pages t | Find the list of Login wise groups in the **Source access** doc |
| 3. Search for updates in the following Public forums & blogs using the steps mentioned in **Social Media Login** doc. | a. If assigned multiple logins, open each in different browser and the corresponding groups of the account in different tabs<br>b. Change the filter at the top of each group to "New post"<br>c. Collect posts of corresponding shift |
| 4. Categorization of posts | a. Compare the collected posts with **Post categorization template**<br>b. Read out the example mentioned across corresponding category and sub-category<br>c. Determine the right category and sub-category<br>d. If relevant information not found consult with the Cam/Sid |
| 5. Investigation of the posts | a. Open the **Investigation doc**<br>b. Reach out to the relevant category and find out the use case of the post<br>c. Determine the relevant details required for the investigation |
| 6. Finding out details using different tools | a. Open the **Tools doc**<br>b. Follow the mentioned steps to find out relevant information required<br>C. Collate the information |
| 7. Reporting of the post | Use the **Reporting template** doc to report out the post in the DL |
| 8. Updates for next shift associates | Use the **Shift handover** doc to pass on any relevant issues to be followed up by the associates in the next shift |

21.     Issues raised by the Drivers in these closed Facebook groups are compiled into reports and delivered to Amazon's Corporate Department.  The reports are then filtered and categorized through a tool called the "Social Media Bank." Reports detailing driving and warehouse conditions, strikes, pay, deliveries, benefits, unionizing, being approached by researchers examining Amazon's workforce, and/or protests are flagged by Advocacy Operations.[1]

---

[1] Lauren K. Gurley & Joseph Cox, *Inside Amazon's Secret Program to Spy on Workers' Private Facebook Groups*, VICE, Sept. 1, 2020, https://www.vice.com/en/article/3azegw/amazon-is-spying-on-its-workers-in-closed-facebook-groups-internal-reports-show.

22.    The below screenshot is an example of a post by Amazon Flex drivers complaining about not receiving delivery slots that was intercepted by Amazon:

**ISSUE**: DPs were complaining of not receiving blocks. Many were of the view that the block count has reduced since the holiday and the volume is being taken away by white vans. They are confirming it by asking the station staff. Few have also opined that the decrease in the offers have been noticed not at all stations. Some are definitely being impacted while the rest are just working fine.

**TOTAL POSTS**: 03, **COMMENTS**: 52

23.    Amazon asked its employees to keep this monitoring program secret and created a special login page to access the reports.  In fact, on the login page for Social Media Bank, Defendant admits that "most of the Post/Comment screenshots within the site are from closed Facebook groups.  It will have a detrimental effect if it falls within the reach of any of our Delivery partners. **DO NOT SHARE** without proper authentication":



CASE NO. 3:20-CV-02365-WQH-BGS

1    24.    These processes, as currently employed by Amazon, function as a

2    wiretap.

3    **Defendant Wiretapped Plaintiff's Electronic Communications**

4    25.    Since 2016, Plaintiff has been a member of closed Facebook groups for

5    Amazon Flex drivers.

6    26.    Plaintiff communicated to other Flex Drivers in the closed Facebook

7    groups.

8    27.    Plaintiff communicated about such topics as Amazon missing payments,

9    driving routes, checking into the warehouse five minutes before shifts started, no

10   breaks during driving shifts, delivers, and having to drive after shifts ended to finish

11   delivering packages, which resulted in subsequent labor disputes with Amazon.

12   28.    Plaintiff's posts were tracked and intercepted by Defendant in real time

13   using the aforementioned processes.

14   29.    Amazon intercepted these posts without Plaintiff's consent.  The

15   Facebook groups were closed, and Plaintiff believed he was only communicating

16   with other Flex Drivers.

17              **CLASS ACTION ALLEGATIONS**

18   30.    Plaintiff seeks to represent a class of all Flex Drivers in the United States

19   who were members the closed Facebook groups, and whose electronic

20   communications were intercepted by Defendant (the "Class").  Plaintiff reserves the

21   right to modify the class definition as appropriate based on further investigation and

22   discovery obtained in the case.

23   31.    Plaintiff also seeks to represent a subclass of all Class members in the

24   State of California who were members the closed Facebook groups, and whose

25   electronic communications were intercepted by Defendant (the "California

26   Subclass").  Plaintiff reserves the right to modify the subclass definition as

27   appropriate based on further investigation and discovery obtained in the case.

28   32.    The Class and California Subclass shall collectively be referred to as the

7

"Classes."

33.   Members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Classes number in the thousands.  The precise number of members of the Classes and their identities are unknown to Plaintiff at this time but may be determined through discovery. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

34.   Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members of the Classes. Common legal and factual questions include, but are not limited to, whether Defendant has violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 635, intruded upon the seclusion of Plaintiff, violated class members' privacy rights under the California Constitution, violated the Federal Wiretap Act, and violated the Stored Communication Act.

35.   The claims of the named Plaintiff are typical of the claims of the Classes because the named Plaintiff, like all other class members, was a member of one of the closed Facebook Groups and had his electronic communications intercepted and disclosed to Defendant through the use of
Amazon's wiretaps.

36.   Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the members of the Classes he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of members of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

37.   The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Classes.  Each individual member of the Classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish

Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Violation Of The California Invasion Of Privacy Act, Cal. Penal Code § 631

38.　　Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

39.　　Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

40.　　To establish liability under section 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

*Or*

Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

*Or*

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

41.     Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

42.     Amazon's processes, including its automatic monitoring tools and software, and Social Media Bank, are a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

43.     At all relevant times, by using the automatic monitoring tools and software and Social Media Bank, intentionally tapped, electrically or otherwise, the lines of internet communication between Plaintiff and California Subclass members.

44.     At all relevant times, by using the automatic monitoring tools and software and Social Media Bank, Defendant willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and putative California Subclass members, while the electronic communications were in

10

1   transit or passing over any wire, line, or cable, or were being sent from or received at

2   any place within California.

3       45.     Defendant implemented the automatic monitoring tools and software and

4   Social Media Bank to accomplish the wrongful conduct at issue here.

5       46.     Plaintiff and California Subclass members did not consent to any of

6   Defendant's actions in implementing the wiretaps in the closed Facebook groups.

7   Nor have Plaintiff or California Subclass members consented to Defendant's

8   intentional access, interception, reading, learning, recording, and collection of

9   Plaintiff and California Subclass members' electronic communications.

10      47.     The violation of section 631(a) constitutes an invasion of privacy

11  sufficient to confer Article III standing.

12      48.     Unless enjoined, Defendant will continue to commit the illegal acts

13  alleged here.  Plaintiff continues to be at risk because he frequently uses the closed

14  Facebook groups to communicate to Flex Drivers.  Plaintiff continues to desire to use

15  the Facebook for that purpose, but cannot without being unwillingly monitored by

16  Defendant.  Plaintiff may or is likely to visit the closed Facebook groups in the

17  future.  As such, he has no practical way to know if his communications will be

18  monitored or recorded by Defendant.

19      49.     Plaintiff and California Subclass members seek all relief available under

20  Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000

21  per violation.

## COUNT II
### Violation Of The California Invasion Of Privacy Act,
### Cal. Penal Code § 635

25      50.     Plaintiff repeats the allegations contained in the foregoing paragraphs as

26  if fully set forth herein.

27      51.     Plaintiff brings this claim individually and on behalf of the members of

28  the proposed California Subclass against Defendant.

52.     California Penal Code § 635 provides, in pertinent part:

> Every person who manufactures, assembles, sells, offers for
> sale, advertises for sale, possesses, transports, imports, or
> furnishes to another any device which is primarily or
> exclusively designed or intended for eavesdropping upon the
> communication of another, or any device which is primarily
> or exclusively designed or intended for the unauthorized
> interception or reception of communications between
> cellular radio telephones or between a cellular radio
> telephone and a landline telephone in violation of Section
> 632.5, or communications between cordless telephones or
> between a cordless telephone and a landline telephone in
> violation of Section 632.6 , shall be punished by a fine not
> exceeding two thousand five hundred dollars.

53.     At all relevant times, by using automatic monitoring tools and software and the Social Media Bank, Defendant intentionally manufactured, assembled, sold, offered for sale, advertised for sale, possessed, transported, imported, and/or furnished a wiretap device that is primarily or exclusively designed or intended for eavesdropping upon the communication of another.

54.     The automatic monitoring tools and software and the Social Media Bank, are "devices" that are "primarily or exclusively designed" for eavesdropping. That is, the automatic monitoring tools and software and social media bank are designed to gather private postings on Facebook and other electronic communications.

55.     Plaintiff and California Subclass members did not consent to any of Defendant's actions in implementing wiretaps.

56.     Unless enjoined, Defendant will continue to commit the illegal acts alleged here.  Plaintiff continues to be at risk because he frequently uses the closed Facebook groups to communicate to Flex Drivers.  Plaintiff continues to desire to use the Facebook for that purpose, but cannot without being unwillingly monitored by Defendant.  Plaintiff may or is likely to visit the closed Facebook groups in the

future. As such, he has no practical way to know if his communications will be monitored or recorded by Defendant.

57. Plaintiff and California Subclass members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

## COUNT III
### Intrusion Upon Seclusion

58. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

59. Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

60. At all relevant times, by implementing the wiretaps on the Facebook groups, Defendant intentionally intruded upon the seclusion of Plaintiff and members of the California Subclass.

61. Defendant's deception was deliberate.

62. When visiting the private Facebook groups, Plaintiff and members of the California Subclass had an objectively reasonable expectation of privacy.

63. Plaintiff and members of the California Subclass did not consent to any of Defendant's actions in implementing the wiretaps on the Facebook groups.

64. Defendant's intentional intrusion on Plaintiff's and members of the California Subclass' solitude or seclusion without consent would be highly offensive to a reasonable person.

## COUNT IV
### Invasion Of Privacy Under California's Constitution

65. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

66. Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

67.     Plaintiff and California Subclass members have an interest in: (1) precluding the dissemination and/or misuse of their confidential posts on Facebook; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and join Facebook groups and communicate with other members without being subjected to wiretaps without Plaintiff's and California Subclass members' knowledge or consent.

68.     At all relevant times, by implementing wiretaps in the closed Facebook groups, Defendant intentionally invaded Plaintiff's and California Subclass members' privacy rights under the California Constitution.

69.     Plaintiff and California Subclass members had a reasonable expectation that their communications, personally-identifiable information, and other data would remain confidential and that Defendant would not install wiretaps on the closed Facebook groups.

70.     Plaintiff and California Subclass members did not consent to any of Defendant's actions in implementing the wiretaps in the closed Facebook groups.

71.     This invasion of privacy is serious in nature, scope and impact.

72.     This invasion of privacy alleged here constitutes an egregious breach of the social norms underlying the privacy right.

73.     Plaintiff and California Subclass members seek all relief available for invasion of privacy claims under California's Constitution.

**<u>COUNT V</u>**
**For The Interception And Disclosure Of Wire, Oral, or Electronic Communications In Violation Of The Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.***

74.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

75. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

76. As alleged herein, Defendant intentionally intercepted the electronic communications of Plaintiff and the proposed Classes.

77. Each of Defendant's wiretaps, automatic monitoring tools and software described herein, is an "electronic, mechanical, or other device" as defined by 18 U.S.C. § 2510(5), and is primarily used for the purpose of the surreptitious interception of electronic communications.

78. Upon information and belief, Defendant intercepts the electronic communications contemporaneously as they are sent.

79. Upon information and belief, Defendant receives and stores these messages through the employment of a mechanical or electrical tool or apparatus that is considered a device under 18 U.S.C § 2510, *et seq.*

80. Defendant's interception and internment of electronic communications sent between Plaintiff and members of the Classes is intentional, as alleged herein.

81. Defendant's conduct violated 18 U.S.C. § 2511 and therefore gives rise to a claim under 18 U.S.C. § 2520.

82. Pursuant to 18 U.S.C. § 2520, Plaintiff and the Classes are entitled to the greater of actual damages or statutory damages or not less than $100 a day for each day of violation or $10,000, whichever is greater.

<u>COUNT VI</u>
**For The Manufacture, Distribution, Possession, And Advertising of Wire, Oral, Or Electronic Communication Interception Devices In Violation Of The Federal Wiretap Act,**
**18 U.S.C. § 2512**

83. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

84. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

85.    18 U.S.C. § 2512, in pertinent part, holds "any person" liable "who intentionally":

> manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce.

18 U.S.C. § 2512(1)(b).

86.    Each of Defendant's wiretaps, including the automatic monitoring tools and software described herein, is an "electronic, mechanical, or other device" as defined by 18 U.S.C. § 2510(5), and are primarily useful for the purpose of the surreptitious interception of electronic communications.

87.    At all relevant times, by using automatic monitoring tools and software and the Social Media Bank, Defendant intentionally manufactured, assembled, and/or possessed a device that is primarily useful for the purpose of surreptitious interception of electronic communications.

88.    Defendant knew or had reason to know that the automatic monitoring tools and software and the Social Media Bank—which were transported through interstate commerce over the internet—were primarily useful for the purpose of wiretapping electronic communications.

89.    Plaintiff and California Subclass members did not consent to any of Defendant's actions in implementing wiretaps.

90.    Defendant's conduct violated 18 U.S.C. § 2512 and therefore gives rise to a claim under 18 U.S.C. § 2520.

91.    Pursuant to 18 U.S.C. § 2520, Plaintiff and the Classes are entitled to the greater of actual damages or statutory damages or not less than $100 a day for each day of violation or $10,000, whichever is greater.

**<u>COUNT VII</u>**
**Violation Of The Stored Communications Act,**
**18 U.S.C. §§ 2701, *et seq.***

92. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

93. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

94. The Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701, *et seq.*, prohibits "intentionally access[ing] without authorization a facility through which an electronic communication service is provided … and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage." 18 U.S.C. § 2701(a)(1)."

95. The Social Media Bank and Defendant's automatic monitoring tools are "electronic communication service[s]" as defined in 18 U.S.C. § 2510(15).

96. At the time Plaintiff and the Classes' electronic communications were accessed without authorization on Facebook, the data was in "electronic storage" as required by the SCA.

97. At all relevant times, Defendant intentionally accessed the contents of Plaintiff's and members of the Classes' Facebook Groups, and thereby obtained the contents of the Facebook Groups while the contents were in storage.

98. At all relevant times, Defendant acted without authorization.

99. Defendant was not a party to any of these electronic communications.

100. Plaintiff and members of the Classes are permitted to bring a civil action over these violations of the SCA. 18 U.S.C. § 2707(a).

101. Plaintiff and members of the Class seek all relief available under the SCA, including damages suffered by Plaintiff and members of the Classes for not less than $1,000, and punitive damages. 18 U.S.C. § 2707(c).

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)  For an order certifying the Classes under Rule 23 and naming Plaintiff as the representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)  For an order declaring that the Defendant's conduct violates the statutes referenced herein;

(c)  For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d)  For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury;

(e)  For prejudgment interest on all amounts awarded;

(f)  For an order of restitution and all other forms of equitable monetary relief;

(g)  For injunctive relief as pleaded or as the Court may deem proper; and

(h)  For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

# **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues so triable.

Dated:  February 19, 2021          Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:  ___*/s/ Neal J. Deckant*___
         Neal J. Deckant

L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455

Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
ndeckant@bursor.com

*Attorneys for Plaintiff*

19

**EXHIBIT B**

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| DRICKEY JACKSON, et al. | ) |
| *Plaintiff* | ) |
| v. | ) |
| AMAZON.COM, INC. | ) |
| *Defendant* | ) |

Civil Action No. 20-cv-02365-WQH-BGS

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: META PLATFORMS, INC.
1601 WILLOW ROAD,MENLO PARK, CA 94025

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment 1.

| Place: Bursor & Fisher, P.A. (Attn: Neal J. Deckant) 1990 N. California Blvd., Suite 940 Walnut Creek, CA 94596 | Date and Time: 09/15/2023 10:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 08/23/2023

*CLERK OF COURT*

OR

_____
*Signature of Clerk or Deputy Clerk*

Neal J. Deckant
_____
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Plaintiff Drickey Jackson                                                , who issues or requests this subpoena, are:
Neal J. Deckant, Bursor & Fisher, 1990 N. California Blvd., Suite 940, Walnut Creek, CA 94596
ndeckant@bursor.com, 925-300-4455

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 20-cv-02365-WQH-BGS

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**EXHIBIT 1**

1
2
3
4
5
6

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
Neal J. Deckant (SBN 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
       ndeckant@bursor.com

7
8
9
10
11
12
13

**BURSOR & FISHER, P.A.**
Alec M. Leslie (*Pro Hac Vice*)
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: aleslie@bursor.com
       mroberts@bursor.com

*Attorneys for Plaintiff*

14
15

## UNITED STATES DISTRICT COURT

16

## SOUTHERN DISTRICT OF CALIFORNIA

17
18
19
20
21
22
23

| | |
|---|---|
| DRICKEY JACKSON, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>    v.<br><br>AMAZON.COM, INC.,<br><br>          Defendant. | Case No. 3:20-cv-02365-WQG-BGS<br><br>**ATTACHMENT 1 TO SUBPOENA ON META PLATFORMS, INC.** |

24
25
26
27
28

1

2

Pursuant to Federal Rules of Civil Procedure 26 and 45, Plaintiff Drickey Jackson requests that Meta Platforms, Inc. ("Meta") respond to the following Requests.  Plaintiff requests that Meta provide all responsive documents to these requests in accordance with the following instructions and definitions to Neal J. Deckant of Bursor & Fisher, P.A., located at 1990 N. California Blvd., Ste. 940, Walnut Creek, California 94596, or by electronic means.

3

4

5

6

7

## **DEFINITIONS**

8

The definitions below are incorporated by reference whenever applicable in this document.  As used herein, all terms shall have the fullest and broadest meaning accorded to those terms and shall have the meaning generally ascribed to such terms in common parlance.

9

10

11

12

1.      The terms "AND" and "OR" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

13

14

15

16

2.      The term "COMMUNICATION" shall refer to all communications, both written and oral, including, but not limited to, letters, memoranda, e-mails, text messages, instant messages, Twitter messages, Facebook postings, e-room postings, facsimiles, wire transfers, reports, interviews, statements, invoices, contracts, agreements, and consultations.  Whenever a request refers to communications with others, such request also refers to communications with all persons acting on behalf of that other, including, but not limited to, employees, officers, managers, directors, parent corporations, subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, associates, consultants, investigators, secretaries, assistants, agents, brokers, auditors, or attorneys.

17

18

19

20

21

22

23

24

25

3.      The terms "DEFENDANT" and "AMAZON" shall refer to Amazon.com, Inc., and any of its employees, officers, directors, representatives, and agents.

26

27

28

4.      The term "META" shall refer to Meta Platforms, Inc.

5.      The term "FACEBOOK" shall refer to the Facebook.com social networking site operated by META.

6.      The terms "FACEBOOK GROUP" or "PRIVATE FACEBOOK GROUP" shall mean any group on Facebook composed of Amazon Flex Drivers that was designated as "private" or "closed," as described in the First Amended Complaint (ECF No. 11), *see* Attachment A, including but not limited to the following:

- Amazon San Diego
- Amazon Los Angeles
- Amazon Flex San Francisco Bay Area
- Amazon Flex DSM1 Sacramento
- Amazon Flex Sacramento
- Amazon Flex Drivers of Riverside (DLA5)
- Amazon Flex Fresno
- Amazon Flex Orange County (UCA4/FCA4/DLA9/FAB9)
- Amazon Flex Drivers of LA - Prime Now, Amazon Fresh, Wholefoods
- Amazon Flex Drivers
- Amazon Flex Drivers
- Amazon Flex Las Vegas
- Amazon Flex Drivers of Richmond, VA
- Amazon Flex San Diego Drivers
- Amazon Los Angeles
- Amazon Flex San Francisco Bay Area
- Amazon Flex DSM1 Sacramento
- Amazon Flex Sacramento
- Amazon Flex Drivers of Riverside (DLA5)

2

| | |
|---|---|
| 1 | • Amazon Flex Fresno |
| 2 | • Amazon Flex Orange County (UCA4/FCA4/DLA9/FAB9) |
| 3 | • Amazon Flex Drivers of LA - Prime Now, Amazon Fresh, |
| 4 | Wholefoods |
| 5 | • Official Amazon Flex Drivers of Portland |
| 6 | • Amazon Flex Seattle Tacoma |
| 7 | • Amazon Flex Drivers in Raleigh |
| 8 | • Deactivated Amazon Flex-er's |
| 9 | • Amazon-Flex Drivers' Lounge (Phoenix, AZ) |
| 10 | • Amazon Flex Drivers Dallas/Ft. Worth |
| 11 | • Amazon Flex Drivers Dallas |
| 12 | • Amazon Flex Austin |
| 13 | • San Antonio Amazon Flex (Logistics) Drivers |
| 14 | • Official Amazon Flex of Orlando Drivers |
| 15 | • Amazon Flex Drivers Tampa |
| 16 | • Amazon Flex Drivers of Minneapolis/St. Paul |
| 17 | • Milwaukee/Sussex Amazon Flex Drivers |
| 18 | • Amazon Delivery Service Provider |
| 19 | • Amazon Flex Chicago Drivers |
| 20 | • Amazon Flex Chicago (Logistics) |
| 21 | • Amazon Flex Drivers of Akron |
| 22 | • Amazon Flex Forum - Cincinnati/NKY/IN |
| 23 | • Amazon Flex Miami |
| 24 | • Amazon Flex Drivers - DMV |
| 25 | • Amazon Flex Drivers Boston/Massachusetts |
| 26 | • Amazon Flex Drivers of Virginia Beach |
| 27 | • Amazon Flex Drivers of Atlanta |
| 28 | • Aazon Flex Drivers of the Baltimore Region |

PLAINTIFF'S ATTACHMENT 1 TO SUBPOENA
CASE NO. 3:20-CV-02365-WQG-BGS

- Amazon Flex Houston

7. The term "DOCUMENT" shall include writings, drawings, graphs, charts, photographs, sound recordings, images, Excel sheets, PowerPoint files, and other data or data compilations stored in any medium from which information can be obtained, either directly or after translation, into a reasonably usable form.

8. The terms "INDIVIDUAL" and "PERSON" shall mean any natural person or any corporation, partnership, limited liability company, limited liability partnership, limited partnership, joint venture, firm, association, proprietorship, or any other business, legal or governmental entity or association.

9. The term "PLAINTIFF" shall mean Drickey Jackson.

10. The use of the singular form of any word includes the plural and vice versa.

## **INSTRUCTIONS**

1. Unless otherwise specified in a particular request, the time period covered by each request runs from January 1, 2016.

2. Plaintiff asks that the production be made pursuant to the protocol for the production of Electronically Stored Information, *see* Attachment C. However, Plaintiff's counsel is available to meet and confer about any alternative production format.

3. If you withhold information or documents based on privilege, please serve with your written responses and objections all information to support the privilege claim, as required under Federal Rule of Civil Procedure 26(b)(5) and any other applicable rule or order.

4. <u>You may be required to obtain and produce responsive, non-privileged documents from certain third parties in response to these requests.</u>  Hence, an objection that a request seeks documents outside YOUR possession or custody cannot support withholding documents if those documents are in the possession of an agent or others subject to YOUR control, or are otherwise available to YOU on

4

demand.

5.       If you object to producing documents within a specified date, please <u>propose in writing a date certain for substantial completion of the production, and contact opposing counsel to schedule a meet and confer to discuss the proposal</u>.  A statement that you will provide documents on a "rolling basis" at an unspecified time is inadequate.  *Tierno v. Rite Aid Corp.*, 2008 WL 3287035, at *4 (N.D. Cal. July 31, 2008) ("Judge Larson found that rolling production is not satisfactory and that Rite Aid shall provide Plaintiff with a date or dates for production of documents responsive to specific requests."); *Navarro v. Gen. Nutrition Corp.*, 2004 WL 2648373, at *26 (N.D. Cal. Nov. 19, 2004) ("[I]t was not enough for GNC to simply promise a rolling production.").

6.       Do not redact any documents produced, except to protect a meritorious claim of attorney-client or work product privilege.  The unilateral redaction of responsive documents is improper, and "a court may well award sanctions for non-disclosure of requested evidence up to and including default/dismissal based on a seeming bad faith hiding of information."  *Evon v. Law Offices of Sidney Mickell*, 2010 WL 455476, at *2 n.1 (E.D. Cal. Feb. 3, 2010).  A party cannot "take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case."  *Live Nation Merch., Inc. v. Miller*, 2014 WL 1877912, at *3 (N.D. Cal. May 9, 2014) (internal quotation omitted).

7.       To the extent that any objections are made, please clearly state whether you are withholding any documents based on your objections.  To avoid ambiguity, if you have no responsive documents to produce in response to a request but nonetheless object to that request, please confirm that you have no documents to produce.

# **REQUESTS FOR PRODUCTION**

1.      All DOCUMENTS and COMMUNICATIONS concerning or related to PLAINTIFF's activities on the FACEBOOK GROUPS, including: (i) a complete listing of all posts made by PLAINTIFF on the FACEBOOK GROUPS, (ii) the date that PLAINTIFF joined the FACEBOOK GROUPS, and (iii) any other activity conducted by PLAINTIFF on the FACEBOOK GROUPS.

2.      All DOCUMENTS and COMMUNICATIONS concerning or related to PLAINTIFF'S activities on the FACEBOOK GROUPS named "Amazon Flex San Diego Drivers" and "QUCA6/RCA6 San Diego Amazon Flex Drivers," including: (i) a complete listing of all posts made by PLAINTIFF on these groups, (ii) the date that PLAINTIFF joined these groups, and (iii) any other activity conducted by PLAINTIFF on these groups.

3.      All DOCUMENTS and COMMUNICATIONS concerning or related to the "permission" settings or "closed" nature for each of the FACEBOOK GROUPS from January 1, 2016 to the present, including but not limited to: (i) whether non-members are able to see posts and activities in such groups, (ii) whether members of the public are able to join such groups, (iii) whether there is an interview or screening process for prospective members to join such groups, and (iv) whether the groups had posted rules or policies limiting membership to certain individuals (*e.g.*, Amazon Flex drivers).

4.      DOCUMENTS sufficient to show, *for each month* from January 1, 2016 to the present, the total number of members enrolled *nationwide* in each of the FACEBOOK GROUPS (*i.e.*, the number of members, per month, for each of the private groups, on a nationwide basis).

5.      DOCUMENTS sufficient to show, from January 1, 2016 to the present, the total number of members enrolled *nationwide* in each of the FACEBOOK GROUPS (*i.e.*, the total number of members for the full time period, for each of the

PLAINTIFF'S ATTACHMENT 1 TO SUBPOENA
CASE NO. 3:20-CV-02365-WQG-BGS

private groups, on a nationwide basis, <u>not</u> broken down by month).

6. DOCUMENTS sufficient to show, *for each month* from January 1, 2016 to the present, the total number of members *nationwide* who had posted in each of the FACEBOOK GROUPS (*i.e.*, the total number of unique posters, per month, for each of the private groups, on a nationwide basis).

7. DOCUMENTS sufficient to show, from January 1, 2016 to the present, the total number of members *nationwide* who had posted in each of the FACEBOOK GROUPS (*i.e.*, the total number of posters for the full time period, for each of the private groups, on a nationwide basis, <u>not</u> broken down by month).

8. DOCUMENTS sufficient to show, *for each month* from January 1, 2016 to the present, the total number of members enrolled *in the State of California* in each of the FACEBOOK GROUPS (*i.e.*, the number of members, per month, for each of the private groups, in California).

9. DOCUMENTS sufficient to show, from January 1, 2016 to the present, the total number of members enrolled *in the State of California* in each of the FACEBOOK GROUPS (*i.e.*, the total number of members for the full time period, for each of the private groups, in California, <u>not</u> broken down by month).

10. DOCUMENTS sufficient to show, *for each month* from January 1, 2016 to the present, the total number of members *in the State of California* who had posted in each of the FACEBOOK GROUPS (*i.e.*, the total number of unique posters, per month, for each of the private groups, in California).

11. DOCUMENTS sufficient to show, from January 1, 2016 to the present, the total number of members *in the State of California* who had posted in each of the FACEBOOK GROUPS (*i.e.*, the total number of posters for the full time period, for each of the private groups, in California, <u>not</u> broken down by month).

12. All DOCUMENTS and COMMUNICATIONS concerning or related to AMAZON'S policies and procedures regarding social media accounts or monitoring the FACEBOOK GROUPS, including but not limited to DOCUMENTS and

COMMUNICATIONS related to account creation and monitoring social media.

13.    All DOCUMENTS and COMMUNICATIONS concerning any information from AMAZON resulting from collecting, capturing, accessing, or reading any posts made in the FACEBOOK GROUPS, including but not limited to any reports, analyses, or proposals.

14.    All DOCUMENTS and COMMUNICATIONS concerning the method by which AMAZON gained access to the FACEBOOK GROUPS, including but not limited to any Facebook accounts used to gain access, any requests by AMAZON to gain access to the FACEBOOK GROUPS, any permission granted by members of the FACEBOOK GROUPS, or any correspondences AMAZON had with members or moderators of the FACEBOOK GROUPS as part of the enrollment process.

15.    DOCUMENTS sufficient to show each member of the PRIVATE FACEBOOK GROUPS, including (i) their full name, (ii) mailing address, (iii) e-mail address, and (iv) date of enrollment.  (If META objects to this production on the basis of protecting its users' privacy, this request can be resolved with a declaration stating that such information exists and is within the possession of META.)

16.    DOCUMENTS sufficient to show each of the posts made in the PRIVATE FACEBOOK GROUPS.  (If META objects to this production on the basis of protecting its users' privacy, this request can be resolved with a declaration stating that such information exists and is within the possession of META.)

Dated:  August 23, 2023          **BURSOR & FISHER, P.A.**

By:  */s/ Neal J. Deckant*
       Neal J. Deckant

L. Timothy Fisher (SBN 191626)
Neal J. Deckant (SBN 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700

PLAINTIFF'S ATTACHMENT 1 TO SUBPOENA
CASE NO. 3:20-CV-02365-WQG-BGS

E-Mail: ltfisher@bursor.com
           ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
Alec M. Leslie (*Pro Hac Vice*)
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: aleslie@bursor.com
           mroberts@bursor.com

*Attorneys for Plaintiff*

PLAINTIFF'S ATTACHMENT 1 TO SUBPOENA
CASE NO. 3:20-CV-02365-WQG-BGS

**EXHIBIT C**

| Attorney or Party without Attorney:<br>NEAL J. DECKANT (SBN 322946)<br>Bursor & Fisher, P.A.<br>1990 N California Blvd Suite 940<br>Walnut Creek, CA 94596<br>  Telephone No: 925-300-4455 | | **For Court Use Only** |
|---|---|---|
|   Attorney For: Plaintiff | Ref. No. or File No.:<br>JACKSON V AMAZON.COM | |
| Insert name of Court, and Judicial District and Branch Court:<br>In the United States District Court for the Southern District of California | | |
| Plaintiff: DRICKEY JACKSON, et al.<br>Defendant: AMAZON.COM, INC. | | |

| **PROOF OF SERVICE** | Hearing Date:<br>09/15/2023 | Time:<br>10 AM | Dept/Div: | Case Number:<br>20-CV-02365-WQH-BGS |
|---|---|---|---|---|

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

3.   *a.*   *Party served:*     META PLATFORMS, INC.
    *b.*   *Person served:*   Cory Hearne, Person in charge. Authorized to Accept.

4.   *Address where the party was served:*   1601 WILLOW ROAD, MENLO PARK, CA 94025

5.   *I served the party:*
    a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Wed, Aug 23 2023 (2) at: 02:29 PM

6.   **Person Who Served Papers:**
    a. Ellenor Rios (PS0984, Santa Clara)              **d.** **The Fee** for Service was:
    **b. FIRST LEGAL**
      200 WEBSTER STREET, SUITE 201
      OAKLAND, CA 94607
    c. (415) 626-3111

7.   **I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

| 08/23/2023 | |
|---|---|
| *(Date)* | *(Signature)* |



PROOF OF
SERVICE

9425016
(6018745)

**EXHIBIT D**



**Neal Deckant <ndeckant@bursor.com>**

---

## [Case #8058522]

---

**Records** <records@records.facebook.com>                                      Mon, Aug 28, 2023 at 7:54 AM
Reply-To: Records <records+3REPCJOPRUBQAZNL73HZBEXX6E4CQ@records.facebook.com>
To: ndeckant@bursor.com

Hello,

Meta Platforms, Inc. ("Meta") received a subpoena from you issued on behalf of a private, non-governmental party on August 23, 2023 (Case name or Case# 20-cv-02365-WQH-BGS) seeking information associated with a purported Facebook account. Meta objects to your subpoena for the reasons below. Please review this information, as well as information available in Facebook's Help Center, located at http://www.facebook.com/help/. Meta reserves all objections and rights.

Requests for User Content and Information

Meta addresses all requests related to user accounts in accordance with the federal Stored Communications Act, 18 U.S.C. §§ 2701, et seq. Please note that service providers are not the proper recipients of requests for the contents of users' electronic communications.

Requests for the Content of a User Account Must be Directed to the User

If you are seeking the content of a user's electronic communications, such as messages, posts, comments, photos, or videos, you must direct your request to the user or other non-provider entities. Active users can log into their accounts at any time to preserve, collect, produce, and authenticate their account contents. Various tools are available to help users access and download their information. Descriptions of these tools are available in our Help Center.

Meta does not produce user content in response to consent forms. Users can directly respond to party or non-party discovery requests without Meta's involvement. Information about deactivated and deleted accounts, and deleted information, is available in our Help Center and our Data Use Policy.

Requests for Account Details and Non-Content Information

If you are seeking non-content basic subscriber information associated with a user account, your subpoena is not otherwise objectionable, and your subpoena uniquely identifies an account by URL or email address, Meta may produce reasonably available basic subscriber

information, if any, after providing 21-days notice to the user of an affected account. If you wish to proceed with this limited scope of discovery, please contact us.

Additional Considerations and Objections

Meta cannot respond to subpoenas containing requests that are overly broad, unduly burdensome, vague, or not reasonably calculated to lead to the discovery of admissible evidence. Please ensure that you have identified a unique user account by URL or email address and that your request is appropriately date and field limited.

Meta objects to all requests that seek protected or privileged information, including information protected by the attorney-client or other applicable privilege, or confidential, proprietary, or trade secret information.

Meta is not in a position to authenticate or verify account content. Such requests should be directed to the creator or recipient of the content. Meta also is not in a position to provide witnesses for trial or deposition. The appearance of a records custodian is unnecessary because any non-content records produced are self-authenticating.

Finally, Meta does not preserve information in response to third party subpoenas or private party or non-governmental requests. Such requests should be directed to the user.

Please correct all deficiencies in your subpoena before reserving.

Sincerely,
Meta Platforms, Inc.

NOTICE: This email (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. Unless you are the intended recipient, you may not use, copy, or retransmit the email or its contents.

**EXHIBIT E**

Meta

# Privacy Policy

**Explore the policy**

What is the Privacy Policy and what does it cover?                                ⌄

What information do we collect?                                                    ⌄

How do we use your information?                                                    ⌄

How is your information shared on Meta Products or with integrated                 ⌄
partners?

How do we share information with third parties?                                    ⌄

How do the Meta Companies work together?                                          ⌄

How can you manage or delete your information and exercise your rights?            ⌄

How long do we keep your information?                                             ⌄

How do we transfer information?                                                    ⌄

How do we respond to legal requests, comply with applicable law and               ⌄
prevent harm?

How will you know the policy has changed?                                          ⌄

Privacy notice for United States residents                                        ⌄

How to contact Meta with questions                                                ⌄

Why and how we process your information                                            ⌄

---

**Other policies**

Terms of Service                                                                  ⧉

Cookies Policy                                                                    ⧉

# What is the Privacy Policy and what does it cover?

Effective June 15, 2023

Read the United States Regional Privacy Notice for more details about how we handle Personal Information and how to exercise your rights.

### Highlights

- This Privacy Policy explains how we collect, use and share your information. It also describes how long we keep your information and how we keep it safe when we transfer it.

- The Privacy Policy also lets you know your rights

- This policy applies to what we call Meta Products, or Products. Our Products include Facebook, Instagram, Messenger and Portal.

- It also applies to Meta Quest if you log in with a Facebook or Meta account

We at Meta want you to understand what information we collect, and how we use and share it. That's why we encourage you to read our Privacy Policy. This helps you use Meta Products[1] in the way that's right for you.

In the Privacy Policy, we explain how we collect, use, share, retain and transfer information. We also let you know your rights. Each section of the Policy includes helpful examples and simpler language to make our practices easier to understand. We've also added links to resources where you can learn more about the privacy topics that interest you.

It's important to us that you know how to control your privacy, so we also show you where you can manage your information in the settings of the Meta Products you use. You can update these settings to shape your experience.

Read the full policy below.



What Products does this policy cover? [1]                                  >

Learn more in Privacy Center about managing your privacy            >

1

## What Products does this policy cover?



This policy describes the information we, Meta Platforms, Inc., process to provide Meta Products. Meta Products, which we also call "Products," include:

- Facebook

- Messenger

- Instagram (including apps like Boomerang and Threads)

- Facebook Portal products

- Meta Platforms Technologies Products, such as Meta Horizon Worlds or Meta Quest (when using a Facebook or Meta account)

- Shops

- Marketplace

- Spark AR

- Meta Business Tools

- Meta Audience Network

- Facebook View

- Meta Pay

- Meta checkout experiences

Some of our Products also have a supplemental privacy policy[2] that adds to the information provided in this policy.

2

## Supplemental policies

| Facebook Portal products | ⬈ |
| Facebook View | ⬈ |
| Free Basics | ⬈ |
| Meta Platforms Technologies Products | ⬈ |
| Oversight Board | ⬈ |

# What information do we collect?

### Highlights

In this policy we list the kinds of information we collect. Here are some important ones. We collect:

- The information you give us when you sign up for our Products and create a profile, like your email address or phone number

- What you do on our Products. This includes what you click on or like, your posts and photos and messages you send. If you use end-to-end encrypted messaging, we can't read those messages unless users report them to us for review.

- Who your friends or followers are, and what they do on our Products

- Information from the phone, computer, or tablet you use our Products on, like what kind it is and what version of our app you're using

- Information from partners[3] about things you do both on and off of our Products. This could include other websites you visit, apps you use or online games you play.

The information we collect and process about you depends on how you use our Products[4]. For example, we collect different information if you sell furniture on Marketplace than if you post a reel on Instagram. When you use our Products, we collect some information about you even if you don't have an account[5].

Here's the information we collect:

### Your activity and information you provide



On our Products[4], you can send messages, take photos and videos, buy or sell things and much more. We call all of the things you can do on our Products "activity." We collect your activity across our Products and information you provide[6], such as:

- Content you create, like posts, comments or audio[7]

- Content you provide through our camera feature or your camera roll settings, or through our voice-enabled features. Learn more[8] about what we collect from these features,

and how we use information from the camera for masks, filters, avatars and effects.

- Messages you send and receive, including their content, subject to applicable law. We can't see the content of end-to-end encrypted messages unless users report them to us for review. Learn more.

- Metadata[9] about content and messages, subject to applicable law

- Types of content, including ads, you view or interact with, and how you interact with it

- Apps and features you use, and what actions you take in them. See examples[10].

- Purchases or other transactions you make, such as through Meta checkout experiences, including credit card information. Learn more[11].

- Hashtags you use

- The time, frequency and duration of your activities on our Products

**Information with special protections**

You might choose to provide information about your religious views, your sexual orientation, political views, health, racial or ethnic origin, philosophical beliefs or trade union membership. These and other types of information could have special protections under the laws of your jurisdiction.

### Friends, followers and other connections

#### Information we collect about your friends, followers and other connections

We collect information about friends, followers, groups, accounts, Facebook Pages and other users and communities you're connected to and interact with. This includes how you interact with them across our Products and which ones you interact with the most.

#### Information we collect about contacts

We also collect your contacts' information, such as their name and email address or phone number, if you choose to upload or import it from a device[12], like by syncing an address book.

If you don't use Meta Products, or use them without an account, your information might still be collected. Learn more about how Meta uses contact information uploaded by account holders.

Learn how to upload and delete contacts on Facebook and Messenger, or how to connect your device's contact list on Instagram.

**Information we collect or infer about you based on others' activity**

We collect information about you based on others' activity. See some examples[13].

We also infer things about you based on others' activity. For example:

- We may suggest a friend to you through Facebook's People You May Know feature if you both appear on a contact list that someone uploads.

- We take into account whether your friends belong to a group when we suggest you join it.

## App, browser and device information

We collect and receive information from and about the different devices[12] you use and how you use them.

Device information we collect and receive includes:

- The device and software you're using, and other device characteristics. See examples[14].

- What you're doing on your device, like whether our app is in the foreground or if your mouse is moving (which can help tell humans from bots)

- Identifiers that tell your device apart from other users', including Family Device IDs. See examples[15].

- Signals from your device. See examples[16].

- Information you've shared with us through device settings, like GPS location, camera access, photos and related metadata[17]

- Information about the network you connect your device to and your connection, including your IP address[18]. See more examples[19].

- Some location-related information, even if Location Services is turned off in your device settings. This includes using IP addresses to estimate your general location.

- Information about our Products' performance on your device. Learn more[20].

- Information from cookies and similar technologies. Learn more.[21]

## Information from partners, vendors and other third parties

**What kinds of information do we collect or receive?**

We collect and receive information from partners[22], measurement vendors, marketing vendors and other third parties[23] about a variety of your information and activities on and off our Products[4].

Here are some examples of information we receive about you:

- Your device[12] information

- Websites you visit and cookie data, like through Social Plugins or the Meta Pixel

- Apps you use

- Games you play

- Purchases and transactions you make off of our Products using non-Meta checkout experiences

- Your demographics, like your education level

- The ads you see and how you interact with them

- How you use our partners' products and services, online or in person

Partners[3] also share information like your email address, cookies[21] and advertising device ID with us. This helps us match your activities with your account, if you have one.

We receive this information whether or not you're logged in or have an account on our Products. Learn more about how we connect information from partners to your account.

Partners also share with us their communications with you if they instruct us to provide services to their business, like helping them manage their communications. To learn how a business processes or shares your information, read their privacy policy or contact them directly.

**Take control**

 Off-Facebook activity  

**How do we collect or receive this information from partners?**

Partners use our Business Tools, integrations and Meta Audience Network technologies to share information with us.

These partners collect your information when you visit their site or app or use their services, or through other businesses or organizations they work with. We require partners to have the right to collect, use and share your information before giving it to us.

## What if you don't let us collect certain information?

Some information is required for our Products to work. Other information is optional, but without it, the quality of your experience might be affected.

Learn more[24] >

## What if the information we collect doesn't identify individuals?

In some cases information is de-identified, aggregated, or anonymized by third parties so that it no longer identifies individuals before it's made available to us. We use this information as described below without trying to re-identify individuals.

## Take control

 Manage the information we collect about you
Privacy Center 

3

## Partner

A person, business, organization or body using or integrating our Products to advertise, market or support their products and services

4

## What Products does this policy cover?



This policy describes the information we, Meta Platforms, Inc., process to provide Meta Products. Meta Products, which we also call "Products," include:

- Facebook

- Messenger

- Instagram (including apps like Boomerang and Threads)

- Facebook Portal products

- Meta Platforms Technologies Products, such as Meta Horizon Worlds or Meta Quest (when using a Facebook or Meta account)

- Shops

- Marketplace

- Spark AR

- Meta Business Tools

- Meta Audience Network

- Facebook View

- Meta Pay

- Meta checkout experiences

Some of our Products also have a supplemental privacy policy[25] that adds to the information provided in this policy.

5

# Information we collect and receive if you use or interact with our Products but don't have an account

Even if you don't have an account, you may interact with or use Meta Products[4]. Then we collect things like:

- Browser and app logs of your visits to public content, like Facebook Pages, videos and rooms

- Basic information about devices[12] that downloaded our apps, like device model and OS

We also receive information using cookies and similar technologies, like the Meta Pixel or Social Plugins, when you visit other websites and apps that use our Business Tools or other Meta Products. Read more about information we receive from partners, vendors and other third parties in this policy and in our Cookies Policy.

## Examples of why we collect and receive information

### Security of our Products

For example, we collect information to monitor attempted attacks on our systems, such as overloading our servers with traffic. Also, if we see someone without an account trying to load too many pages, they could be trying to scrape our site in violation of our terms. Then we can take action to prevent it.

### Safety and integrity

For example, if someone without an account joins a room and shares a harmful video, we

can take action according to our Community Standards. We can remove content that violates our terms and policies, or share information with law enforcement when we believe there is a genuine risk of death or imminent bodily harm.

**Advertising**

For example, you may also see ads for the Meta Company Products shown through Meta Audience Network when you visit other apps if we can't recognize you as a registered user of the Meta Products.

**Performance**

For example, we collect information when people use our Products, even if they don't have an account, to measure how fast our pages load in different countries and whether they're working properly. This helps us identify and fix issues with local networks.

6

# Information you provide

For example, when you create a Facebook account, you must provide some information, like a password and your email address or phone number. You might choose to add other details to your account, like a profile photo or payment information.

We also collect information you provide when you:

- Create your avatar

- Fill out a form

- Contact us

7

# Audio content you create

You can create audio content, like if you're a host or speaker in an audio-only broadcast. Anyone in the audience for the broadcast can listen to this audio content.

8

## What we collect from our camera feature



José likes using Instagram's Camera feature to take pictures of his flower garden. We collect information about how José uses the Camera feature. For example, if he chooses a background effect for the photo he's about to take, we collect information from the camera so we can apply the effect to his photo.

## How filters, effects, masks and avatars work



If you use our camera or allow access to photos and videos, on certain Meta Products you can add filters, effects, masks or avatars. Some of these features process parts of faces or bodies within the camera frame, photo or video. Then they can do things like fit a mask correctly over the eyes, nose and mouth. The information we use for this process is used to create the feature. It's not used to identify you.

### What we collect from voice-enabled features



Ren tells Meta's voice-enabled Assistant to take a photo on Ray-Ban Stories. A visual indicator shows that Assistant is activated and listening for Ren's command. We collect this voice interaction, which includes any background sound that occurs when Ren says the command. Collecting Ren's voice interactions lets us provide and, depending on Ren's settings, improve the Assistant feature.

9

## Metadata

- Information about the content itself, like the location where a photo was taken or the date a file was created

- Information about the message itself, like the type of message or the date and time it

was sent

---

10

## Apps and features you use, and how you use them

For example, we log:

- What apps, posts, videos, ads, games, Shops and other content you view or interact with on our Products

- What features you access from our messaging products

- When you use Social Plugins, Facebook Login, in-app browser link history or autofill

- Information about websites that you visit or interact with when you use our in-app browser. Learn more.

---

11

## Purchases or other transactions

We collect information when you use our Products to buy or sell things or make other financial transactions.

Some examples are:

- Purchases within an online game

- Donations to a friend's fundraiser

- Purchases in Marketplace, Shops or groups

- Purchases made using Meta Pay or other Meta checkout experiences

- Money transfers to friends and family (where available)

**What we collect from transactions**

When you buy things or make other payments in Marketplace, Shops or groups, or use other Meta checkout experiences, we collect information about your purchase or other financial transactions, like:

- Credit or debit card number and other card information

- Billing, shipping and contact details

- Items you bought and how many

- Other account and authentication information

**Why we collect this information**

We collect and store this information to personalize your experience on our Products, for advertising and to allow you to access and view your payment and transaction history, where available.

And, depending on your choices, you can use it the next time you shop to give you easier, faster shopping experiences.

## More in the Privacy Policy

| How do we use your information? | > |

| How do we respond to legal requests, comply with applicable law and prevent harm? | > |

---

12

# Device

Devices include computers, phones, hardware, connected TVs, Portal devices and other web-connected devices.

---

13

## When we collect information based on others' activity

For example, we collect information about you on Meta Products when others:

- Share or comment on a photo you're tagged in

- Send you a message

- Invite you to join a conversation

- Upload their address book that has your contact information in it

- Invite you to play a game

14

## What device you're using, and other device characteristics

We collect device information like:

- The type of device

- Details about its operating system

- Details about its hardware and software

- Brand and model

- Battery level

- Signal strength

- Available storage

- Browser type

- App and file names and types

- Plugins

15

**Identifiers that tell your device apart from other users'**

Identifiers we collect include device IDs, mobile advertiser ID or IDs from games, apps or accounts you use. We also collect Family Device IDs or other identifiers unique to Meta Company Products associated with the same device or account.

16

## Device signals

Device signals include GPS, Bluetooth signals, nearby Wi-Fi access points, beacons and cell towers.

17

## Related metadata

For example, if you give us permission to access your device's camera roll, we collect metadata. This metadata is from and about your photos and videos and includes the date and time they were made. We use this to do things like remind you when you have new photos to upload.

18

## IP address

Stands for "internet protocol address." It's a unique number assigned to a device, like a phone or computer, that allows it to communicate over the internet. Numbers are assigned according to standard guidelines, or protocols.

Just like you need a mailing address to receive a letter from a friend, your device needs an IP address to receive information on the internet.

19

## Information about the network you connect your device to and your internet connection

Information about your network and connection includes:

- The name of your mobile operator or internet service provider (ISP)

- Language

- Time zone

- Mobile phone number

- IP address

- Connection and download speed

- Network capability

- Information about other devices that are nearby or on your network

- Wi-Fi hotspots you connect to using our Products

One reason we collect this information is to make your experience better. For example, if we know that your phone and TV are connected to the same network, we can help you use your phone to control a video stream on your TV.

## More in the Privacy Policy

| How do we use your information? | ❯ |
| --- | --- |

---

20

## Information about our Products' performance on your device

We collect device information to prevent, diagnose, troubleshoot and fix errors and bugs. This includes how long the app was running, what model of device you were using and

other performance and diagnostic information.

---

21

# Information from cookies and similar technologies

Cookies are small pieces of text used to store information on web browsers. We use cookies and similar technologies, including data that we store on your web browser or device, identifiers associated with your device and other software, Social Plugins and the Meta Pixel. They help us provide, protect and improve our Products, such as by personalizing content, tailoring and measuring ads and providing a safer experience.

We collect information from cookies stored on your device, including cookie IDs and settings.

Read our cookie policies:

- Meta Cookies Policy

- Instagram Cookies Policy

---

22

# Types of partners

**Partners**

Our partners[3] use our Products, including our Business Tools and other technologies that allow businesses to advertise or support their products. Business Tools also help our partners understand and measure how people are using their products and services and how well their ads are working. For example, they might put one of our Business Tools, the Meta Pixel, on their website. Or they might use Meta Audience Network tools to monetize their apps by showing ads from businesses that advertise on Facebook.

**Integrated partners**

Integrated partners[26] also use our Products, specifically the technologies that help you make a connection to them. For example, you might log into their app or website using

Facebook Login. Or you might play their game on Facebook, which we call an integration because you can play without leaving our app.

**Who are our partners and integrated partners?**

Here are some examples:

- Advertisers

- Businesses and people that use our Products to sell or offer goods and services

- Publishers (like a website or app) and their measurement vendors

- App developers

- Game developers

- Device manufacturers, internet service providers and mobile network operators

- E-commerce platforms

---

23

# Other third parties we get information from

Some people, businesses, organizations and bodies share information with Meta but don't necessarily use our Products. We collect and receive information from these other third parties[27], including:

- Publicly available sources, like academic papers and public forums

- Industry peers, such as other online platforms and technology companies

- Marketing and advertising vendors and data providers, who have the rights to provide us with your information

- Companies or organizations that provide content, including videos, photos, and audio

- Law enforcement

- Government authorities

- Professional and non-profit groups, like NGOs, and charities

- Academic and research institutions, like universities, non-profit research groups and think tanks

**Third-party public sources**

For example, we get datasets from publicly available sources, research institutions and professional and non-profit groups. We use these datasets to:

- Detect and stop scraping in violation of our terms

- Take other actions to promote the safety, security and integrity of our Products, our users, the public and our personnel and property

- Improve our AI technologies and support AI research and product development, such as translations, computer vision, content understanding, natural language processing, and tools for people and businesses to create content

- Engage with research survey respondents who choose to participate in additional conversations

## More in the Privacy Policy

| How do we use your information? | > |
|---|---|

---

24

## What happens if you don't let us collect certain information

For example, if you don't provide an email address or phone number, we won't be able to create an account for you to use our Products.

Or you can choose not to add Facebook friends, but then your Facebook Feed won't show friends' photos and status updates.

---

25

**Supplemental policies**

Facebook Portal products ⧉

Facebook View ⧉

Free Basics ⧉

Meta Platforms Technologies Products ⧉

Oversight Board ⧉

26

## Integrated partner

A partner who uses technologies that help you make a connection to them through our Products, including plugins, login, checkout experiences, instant games, and other such integrations

27

## Third party

A person, business, organization or body that is not part of the Meta Companies

# How do we use your information?

**Highlights**

Here are some of the ways we use your information:

- We personalize your experience, like by suggesting reels to watch or communities to

join

- We improve our Products by applying information about what you use them to do, and what else is happening on your device when our app crashes

- We work to prevent harmful behavior and keep people safe on our Products

- We send you messages about the Products you use or ones you might like, if you let us

- We research for the good of people around the world, like to advance technology or to help out in a crisis

We use information we collect to provide a personalized experience to you, including ads, along with the other purposes we explain in detail below.

For some of these purposes, we use information across our Products[28] and across your devices[29]. The information we use for these purposes is automatically processed by our systems. But in some cases, we also use manual review[30] to access and review your information.

To use less information that's connected to individual users, in some cases we de-identify or aggregate information or anonymize it so that it no longer identifies you. We use this information in the same ways we use your information as described in this section.

Here are the ways we use your information:

## To provide, personalize and improve our Products

We use information we have to provide and improve our Products[31]. This includes personalizing features, content and recommendations, such as your Facebook Feed[32], Instagram feed, Stories and ads. We use information with special protections you choose to provide for these purposes, but not to show you ads.

Read more about how we use information to provide, personalize and improve our Products:

### How we show ads and other sponsored or commercial content

When you use our Products, you see ads and sponsored or commercial content, like product listings in Shops. You also see ads shown through Meta Audience Network when

you visit other apps. We want everything you see to be interesting and useful to you.

To decide what to show you and others, we use information we have about you, including:

- Your profile information

- Your activity on and off our Products, including information we receive through cookies and similar technologies, according to your settings

- Content you create or interact with across Facebook and Instagram

- Things we infer about you, like topics we think you may be interested in

- Information about your friends, followers or other connections, including their activity or interests

See some examples.[33]

Learn more about some of the ways we show you ads that we think may be interesting to you, including using machine learning.

**Take control**

 Learn more about how ads work
Privacy Center 

Manage ad preferences

## How we use information to improve our Products

We're always trying to make our Products better and create new ones with the features you want. Information we collect from you helps us learn how.

We use information we collect to:

- See if a product is working correctly

- Troubleshoot and fix it when it's not

- Test out new products and features to see if they work

- Get feedback on our ideas for products or features

- Conduct surveys and other research about what you like about our Products and brands and what we can do better

## How we use location-related information

We use location-related information that you allow us to receive if you turn on the Location Services device setting. This includes things like your GPS location and, depending on the operating system you're using, other device signals[34].

We also receive and use some location-related information even if Location Services is turned off. This includes:

- IP addresses[35], which we use to estimate your general location. We can use IP addresses to estimate your specific location if it's necessary to protect the safety and security of you or others.

- Your and others' activity on our Products, like check-ins and events

- Information you give us directly, like if you enter your current city on your profile, or provide your address in Marketplace

We use location-related information, such as your current location, where you live, the places you like to go and the businesses and people you're near, to do the things described in the "How do we use your information?" section of the Policy, like:

- Provide, personalize and improve our Products, including ads, for you and others. See an example[36].

- Detect suspicious activity and help keep your account secure. Learn how.[37]

### Take control

| How to manage Facebook location settings<br>Facebook Help Center | ⬀ |
|---|---|

| How to turn Instagram location services on or off<br>Instagram Help Center | ⬀ |
|---|---|

| Manage location settings |
|---|

**To promote safety, security and integrity**

We use information we collect to help protect people from harm and provide safe, secure Products.

Learn more ⟩

**To provide measurement, analytics and business services**

Lots of people rely on our Products to run or promote their businesses. We help them measure how well their ads and other content, products and services are working.

Learn more ⟩

**To communicate with you**

We communicate with you using information you've given us, like contact information you've entered on your profile.

Learn more ⟩

**To research and innovate for social good**

We use information we have, information from researchers and datasets from publicly available sources, professional groups and non-profit groups to conduct and support research.

Learn more ⟩

### Promoting safety, security and integrity

Here are some ways we promote safety, security and integrity. We work to:

- Verify accounts and activity

- Find and address violations of our terms or policies. In some cases, the decisions we make about violations are reviewed by the Oversight Board. They may use information we have when they review our decisions. Learn more about how the Oversight Board processes information.

- Investigate suspicious activity

- Detect, prevent and combat harmful or unlawful behavior

- Identify and combat disparities and racial bias against historically marginalized communities

- Detect and prevent spam and other bad experiences

- Detect when someone needs help and provide support

- Detect and stop threats to our personnel and property

- Maintain the integrity of our Products

Learn more about how we work to keep Meta a safe place for everyone.

**Take control**

 Account security                                                                    ❯

## Providing measurement, analytics and business services

To provide measurement and analytics services, we use the information we collect about you across your accounts on our Products.

Our measurement and analytics services help our partners[38] understand things like:

- How many people see and interact with their products, services or content, including posts, videos, Facebook Pages, listings, Shops and ads (including those shown through apps using Meta Audience Network)

- How people interact with their content, websites, apps and services

- What types of people[39] interact with their content or use their services

- How people use our partners' products and services to connect to Meta Products, the performance of their connection and networks and users' experience with them

We also use the information we collect to provide business services.

**More in the Privacy Policy**

How do we share information with partners, vendors, service providers and other third parties? 

## Communicating with you

We communicate with you in a few different ways. For example:

- We send messages about the Products we know you use, using the email you register to your account

- Depending on your settings, we send marketing communications about Products you might like

- We ask you to participate in research based on things like how you use our Products

- We let you know about our policies and terms of service

- When you contact us with questions, we reply to your email

- We facilitate customer support communications with you when you've told us, either directly or through a third party[40], that you have questions or concerns about our Products

We also use information about how you interact with our messages, like if you open an email from us. This helps us understand the best way to reach you and whether our communications are helpful.

**Take control**

 Communication preferences 

## Researching and innovating for social good

We research and innovate to help people around the world. Our goals include:

- Contributing to social good and areas of public interest

- Advancing technology

- Improving safety, health and well-being

Here are some examples of our research:

- We analyze information about where groups of people go during crises. This helps relief organizations get aid to the right places.

- We work with independent researchers to better understand the impact social media might have on elections and democratic processes

- We've collaborated with academics and industry experts to help improve internet access and quality in rural areas

- We support research in areas like artificial intelligence and machine learning to do things like create COVID-19 forecasting models

Learn more about our research programs

## More in the Privacy Policy

Why and how we process your information                                    ›

28

## Using information across our Products

We use information across your accounts on our Products to:

- Personalize ads for you and others. Learn more.

- Measure the performance of those ads. Learn more.

- Provide more personalized features, content and suggestions across our Products. See examples[41].

- More accurately count people and understand how they use our Products

- Help keep you and others safe. Learn more.

If you add accounts to the same Accounts Center, we also use your information to offer connected experiences and improve your experiences across accounts. See an example. [42]

## Take control

How to add or delete accounts in your Accounts Center  ⧉
Facebook Help Center

**Manage accounts**

---

29

# Why we use information across devices

One reason we use your information across devices[43] is to help us give you a more personalized experience. For example, we might show you an ad on your phone, and later you might use your laptop to click on the ad and buy the product. By combining that information across your devices, we can understand what ads are relevant to you and help businesses measure how well their ad performed.

---

30

# Manual review

**Examples of when we use manual review**

- Our reviewers help us promote safety, security and integrity across our Products. For example, reviewers can look for and remove content that violates our terms and policies and keep content that doesn't break our terms and policies available. Their work supplements our technology that detects violations.

- When our algorithms detect that someone might need help, a reviewer can review their post and offer support if needed.

- We also use manual review to analyze content to train our algorithms to review content the same way a person would. This improves our automatic processing, which in turn helps us improve our products.

**Who reviews this information**

Our reviewers work at Meta, for Meta Companies or for a trusted service provider[44]. We require every reviewer who's allowed access to your information to meet privacy and security standards.

Learn more about how Meta prioritizes content for manual review.

31

## What Products does this policy cover?



This policy describes the information we, Meta Platforms, Inc., process to provide Meta Products. Meta Products, which we also call "Products," include:

- Facebook

- Messenger

- Instagram (including apps like Boomerang and Threads)

- Facebook Portal products

- Meta Platforms Technologies Products, such as Meta Horizon Worlds or Meta Quest (when using a Facebook or Meta account)

- Shops

- Marketplace

- Spark AR

- Meta Business Tools

- Meta Audience Network

- Facebook View

- Meta Pay

- Meta checkout experiences

Some of our Products also have a supplemental privacy policy[45] that adds to the information provided in this policy.

32

## How we personalize your Facebook Feed

Your Facebook Feed is unique to you. We order (or "rank") the content you can see in your Feed, and you can learn more about the different types of signals we use to rank it. We also suggest content that's relevant to you.

Many things influence the content you see in your Feed.

For example:

- If your friends, connections or people you may know interact with a Facebook Page, post or certain topic, we can suggest similar content to you. So if your friend Ahmad comments on a post about national parks, we can suggest the national parks post to you.

- If you and others interact with the same group, Facebook Page or post, we can suggest another group, Page or post that they interact with for you. So if you and Sharmila are in the same cat lovers group and Sharmila likes a Page that sells scarves, we might suggest the scarves Page to you.

- If you've recently engaged with a certain topic on Facebook, we might then suggest other posts that are related to that topic. So if you recently liked or commented on a post from a basketball Page, we could suggest other posts about basketball.

- You might see posts based on where you are and what people near you are interacting with on Facebook. So if you're near a sports stadium, we can suggest games or events

occurring at the stadium. Learn more about how we use location-related information.

## Take control

| | |
|---|---|
| How to manage your Facebook Feed<br>Facebook Help Center | ⬈ |
| How to manage your Instagram feed<br>Instagram Help Center | ⬈ |

Manage Facebook Feed

33

### Your activity on our Products



For example, William checks into a local bakery on Facebook, so later we might show him ads on Instagram for other local bakeries.

### Your activity on third-party websites and apps, depending on your settings



For example, Jane buys a pair of shoes from an online shoe store or in an online chat with a shoe seller. The seller shares Jane's activity with us using our Business Tools, subject to our Business Tools Terms.

Later, Jane sees an ad on Instagram for a discount on her next shoe purchase from the online store.

If she doesn't want to see ads from this shoe store again, she can hide them in her Advertisers setting. Or if she doesn't want us to show her any ads based on her activity on other websites and apps, she can make sure that this setting is turned off in her ad preferences.

## Topics we think you might be interested in



For example, Jon likes several Facebook Pages about famous musicians, so we think he has an interest in "music."

Based on this interest, we might show him an ad for a local record shop or an online music publication.

Jon can manage his interests in his ad topics.

## Your connections



For example, Fiona's friend likes an Instagram account for a local art fair. Based on her friend's activity, we might show Fiona an ad for the art fair.

---

34

## Other device signals we receive

We receive different types of device signals from different operating systems. They include things like nearby Bluetooth or Wi-Fi connections.

---

35

## IP address

Stands for "internet protocol address." It's a unique number assigned to a device, like a phone or computer, that allows it to communicate over the internet. Numbers are assigned according to standard guidelines, or protocols.

Just like you need a mailing address to receive a letter from a friend, your device needs an IP address to receive information on the internet.

36

### Personalizing ads for you and others



For example, Marcus is going on a trip and wants to use Find Wi-Fi to find free, public Wi-Fi at the airport. He has turned on Location Services on his device and allowed location access on the Facebook app, so we can use his GPS information to help him find the most relevant public Wi-Fi networks. We'll also use this information to show him ads for local businesses near the airport.

Later, Marcus turns off Location Services before he lands, so we don't collect his GPS information anymore. Later on his trip, he opens the Facebook app, and we can use the IP address we receive to estimate Marcus' general location and show him ads for businesses nearby.

37

## Helping to keep your account secure

For example, we use information about the locations you normally log in from, combined with other information, to detect suspicious activity. So if we detect an attempt to log into your account from a new location, we can check that it's really you.

38

## Partner

A person, business, organization or body using or integrating our Products to advertise, market or support their products and services

39

## Information we provide about different types of people

For example, we might tell an advertiser that their ad was seen by women aged 25–34 who live in Madrid and like software engineering.

40

## Third party

A person, business, organization or body that is not part of the Meta Companies

41

## Providing more personalized features, content and suggestions

**across our Products**

For example we can:

- Automatically fill in registration information, like your phone number, from one Meta Product when you sign up for an account on a different Product

- Let others see and search your name and profile photo across our Products and communicate with you

- Show all interactions in one place for content you've cross-posted to different Products

---

42

## Using your information if you add accounts to the same Accounts Center

For example, if you follow your favorite team on Instagram, we can more easily suggest that you follow that team's Page on Facebook.

Learn more about how we use information across accounts if you add accounts to the same Accounts Center.

---

43

## Device

Devices include computers, phones, hardware, connected TVs, Portal devices and other web-connected devices.

---

44

## Service provider

A person, business, organization or body that provides services to Meta or to our users on

behalf of Meta. For example, our service providers do things like investigate suspicious activity and provide customer support.

45

## Supplemental policies

| | |
|---|---|
| Facebook Portal products | ⧉ |
| Facebook View | ⧉ |
| Free Basics | ⧉ |
| Meta Platforms Technologies Products | ⧉ |
| Oversight Board | ⧉ |

# How is your information shared on Meta Products or with integrated partners?

**Highlights**

- You can choose to share information on our Products or with integrated partners

- Remember to share only with people you trust

- You might decide to use a product that integrates with one of ours, like if you use Facebook Login to log into a music service or a shopping site

- If you do, that organization will ask you to receive some information about you, like your email address or birthday



## On Meta Products

Learn more about the different cases when your information can be shared on our Products[46]:

### People and accounts you share and communicate with

When you share and communicate using our Products, you can sometimes choose the audience[47] for what you share.

When you interact with people or businesses, they can see:

**What you share with them**

For example, the audience you choose can see when you:

- Share a post you've written

- Share a photo or video

- Create a story

- Share a news article

- Add information to your profile

**What you communicate with them**

People you interact with can see what you send to them. So if you send a person or a business a message on Messenger or Instagram, that person or business can read your message.

**Some of your activity**

People and businesses can also see some of your activity on our Products. This includes when you:

- Comment on or react to others' posts

- Engage with ads or other sponsored or commercial content, like by commenting or liking

- Allow content you've shared about a product in a Shop to be shared across our Products

- View their story on Facebook or Instagram

- Connect a new Meta device, like Portal or Ray-Ban Stories, to your account

**When you're active**

Some of our Products might provide you with settings that allow others to see when you're active on our Products, such as "active status." In some cases, we also offer settings that allow others to see when you're active in a particular section of one of our Products, like a message thread, game or event, or when you last used one of our Products.

Learn how to update your Active Status on Facebook and Messenger, or how to update your Activity Status on Instagram.

## Content others share or reshare about you

### Who can see or reshare your content

People in your audience can view your content and can choose to share it with others outside your audience, on and off our Products. For example, when you share a post or send a message to specific friends, they can download, screenshot or reshare it with anyone, on, across or off our Products.

When you comment on a post or react to a photo, your comment or reaction can be seen by anyone who can see the post or photo. This can include people you aren't connected to. The person who shared the post can also change their audience at any time after you've interacted with it.

### How information about you can be shared

People who use our Products can share information about you with the audience they choose. For example, they can:

- Share a photo or video of you in a post, comment, story, reel or message

- Mention you in a post or story

- Tag you in a post, comment, story or location

- Share details about you in a post, story or message

If you're uncomfortable with what others have shared about you on our Products, you can always choose to report posts and stories.

**Take control**

Remove a tag from a photo or post on Facebook
Facebook Help Center

Remove a tag from a photo or video on Instagram
Instagram Help Center

Manage tags

## Public content

### What content is public?

Some of your information and activity are always public. This includes your name, Facebook and Instagram username, profile picture and activity on public Facebook Pages and groups.

Other content you can choose to set to Public, like posts, photos and videos you post to your profile, Stories or Reels.

### Who can see public content?

When content is public, it can be seen by anyone on or across our Products, and in some cases off our Products, even if they don't have an account.

For example, if you comment on Marketplace, a public Facebook Page or a public Instagram account, or if you leave a rating or review, your comment, rating or review will

be visible to anyone. It could appear in any of our Products or be seen by anyone, including off our Products.

**Where can public content be shared?**

We, you and people using our Products can send public content (like your profile photo, or information you share on a Facebook Page or public Instagram account) to anyone on, across or off our Products. For example, users can share it in a public forum, or it can appear in search results on the internet.

Public content can also be seen, accessed, reshared or downloaded through third-party services, like:

- Search engines. Learn more[48].

- APIs

- The media, like TV

- Other apps and websites connected to our Products

**Take control**

| | |
|---|---|
| Public information on Facebook<br>Facebook Help Center | ⬈ |
| How to make a public account private on Instagram<br>Instagram Help Center | ⬈ |

| |
|---|
| Manage public information |

# With integrated partners

You can choose to connect with integrated partners[49] who use our Products. If you do, these integrated partners receive information about you and your activity.

These integrated partners can always access information that's public on our Products. Learn more about other information they receive and how they handle your information:

## When you use an integrated partner's product or service

**Information they receive automatically**

When you use an integrated partner's products or services, they can access:

- What you post or share from these products or services

- What you use their services to do

- Information from and about the device you're using

- The language setting you've chosen on our Products

See examples[50] of when an integrated partner might receive your information.

**Information they receive with your permission**

Sometimes these integrated partners ask you for permission to access certain additional information from your Facebook, Instagram or Messenger account. In their request, they'll explain what information they'd like to access and let you choose whether to share it.

On Facebook, this includes things like your email address, hometown or birthday. On Instagram, this includes content, like photos and videos, that you've shared from your account when the account was set to private.

Learn what happens if you choose to share your friends list, or if your friends choose to share their friends list.[51]

We automatically log when you receive a request from an integrated partner to access your information. These requests to access information are separate from the Apps and Websites access that you manage in your Facebook or Instagram ad settings or in your mobile device settings.

**How long they can access your information**

Apps or websites you've logged into using Facebook Login or connected to your Instagram account can access your nonpublic information on Meta Products unless it appears to us that you haven't used the app or website in 90 days. Note that even if an app's access to your information has expired, it can still retain information you shared with it previously.

We encourage you to visit your Apps and Websites settings from time to time to review which apps and websites continue to have access to your information through Facebook Login or Instagram.

**Take control**

How to manage apps and websites on Facebook
Facebook Help Center 

How to manage apps and websites on Instagram
Instagram Help Center

**Manage apps and websites**

## When you interact with someone else's content on an integrated partner's product or service

Integrated partners receive information about your activity when you interact with other Facebook, Instagram or Messenger users while they're using the integrated partner's product or service.

For example, a gamer livestreams to Facebook using a partner app. Then you comment on that livestream. The app developer will receive information about your comment.

## How integrated partners handle your information

Integrated partners handle the information you share with them according to their own terms and policies, not Meta's. You can review their privacy policy on their website or app to learn how they receive and process your information. In some cases, they use a separate service provider to receive and process your information.

**More resources**

How Meta reviews apps that integrate with our Products
Facebook Developers

# Take control

 Learn more about audiences
Privacy Center ›

Manage apps and websites

46

## What Products does this policy cover?



This policy describes the information we, Meta Platforms, Inc., process to provide Meta Products. Meta Products, which we also call "Products," include:

- Facebook

- Messenger

- Instagram (including apps like Boomerang and Threads)

- Facebook Portal products

- Meta Platforms Technologies Products, such as Meta Horizon Worlds or Meta Quest (when using a Facebook or Meta account)

- Shops

- Marketplace

- Spark AR

- Meta Business Tools

- Meta Audience Network

- Facebook View

- Meta Pay

- Meta checkout experiences

Some of our Products also have a supplemental privacy policy[52] that adds to the information provided in this policy.

---

47

## Choosing an audience

On Facebook, the audience can be made up of:

- The public, including people on and off Facebook

- Your friends and other connections, such as the friends of people you tag

- A customized list of people

- Yourself

- The members of a single community, such as a group

On Instagram, you can set the audience for what you share by choosing between a private or public account. With a private account, only followers you approve can see what you share. With a public account, your posts and other content on Instagram can be seen by anyone, on or off our Products, including if they don't have an account. You can restrict the audience for your content by blocking individual accounts from viewing them. You can also create a close friends list for certain types of content that only the people on that list can see.

## Take control

Audience settings
Manage your audience settings on Facebook or Instagram.                    

**Audience settings are different from app permissions**

Your audience settings are different from the permissions you give to individual apps and websites to access your information. Read our policy about how you may share information with integrated partners.

48

# Search engines

You can visit your privacy settings to control whether search engines outside Facebook can link to your profile. But other public content–like if you post with your audience set to Public, or post on public Pages or accounts–might still be accessible through search engines, depending on the settings of that account.

49

# Integrated partner

A partner who uses technologies that help you make a connection to them through our Products, including plugins, login, checkout experiences, instant games, and other such integrations

50

**When an integrated partner might receive your information**



For example, you might use your Facebook login to play an online game with your Facebook friends. The game developer automatically receives information about your activities in the game.

## When an integrated partner might receive your information



Or you might use the Facebook Like button on an article posted on a news website. The website developer automatically receives information about your Like on their article.

51

# Sharing friends lists

**When you share your friends list**

If you use Facebook Login to log into an app, the app developer might request access to your list of Facebook friends. Here's what happens if you give the app developer permission to view these lists:

- They can view and access a list of your Facebook friends who use the same app and have given the app permission to access their list of friends. They can't access nonpublic information about your friends or followers through this process. Note that the app developer will receive more information about your friends if your friends choose to share it themselves. They can share it by providing the information directly or giving the developer permission to access information from their account.

- You'll appear on friends lists that your Facebook friends can choose to share with the same app. You can remove this permission, or the app entirely, if you later decide that you don't want to share your friends list with an app, or don't want to appear on other friends lists shared with that app.

**When your friends share their friends list**

Your friends might choose to share their friends lists with app developers through Facebook Login. But your friends can't use Facebook Login to share nonpublic information about you.

52

# Supplemental policies

| Facebook Portal products | ↗ |
| Facebook View | ↗ |
| Free Basics | ↗ |



| | |
|---|---|
| Meta Platforms Technologies Products | ⬈ |
| Oversight Board | ⬈ |

# How do we share information with third parties?

**Highlights**

We share certain information with:

- Advertisers who show ads on our Products

- Businesses we hire to market our Products for us

- Businesses we hire to do things like offer customer service or conduct surveys

- Researchers who use it to do things like innovate, advance technology, or improve people's safety

We don't sell your information, and we never will.



We don't sell any of your information to anyone, and we never will. We also require partners[53]

and other third parties[54] to follow rules about how they can and cannot use and disclose the information we provide.

Here's more detail about who we share information with:

## Partners

### Advertisers and Audience Network publishers

**Advertisers**

We provide advertisers with reports about the number and kinds of people who see and engage with their ads. These reports include information about the general demographics and interests of people who engaged with an advertiser's ad. Then advertisers can better understand their audience. See an example[55].

Meta also provides advertisers and their vendors with information about:

- Ads people engaged with, if any

- When people engaged with ads

- Where that ad was shown (for example, on Instagram, or on Facebook)

We also confirm which ads you viewed that led you to take an action with an advertiser, such as downloading an advertiser's app. But we don't share information with these advertisers and their vendors that by itself can be used to contact or identify you, such as your name or email address, unless you give us permission.[56]

**Audience Network publishers and their vendors**

Meta Audience Network lets advertisers place ads with us that will be published on other apps and websites outside of Meta.

To help show you ads on their apps and websites, we share information with publishers who use Audience Network, as well as vendors who facilitate that use. For example, we share:

- How many people see and engage with ads on publisher apps

- Information related to or in response to a publisher's request to serve an ad on its app.

But we don't share information with these publishers and their vendors that by itself can be

used to contact or identify you, such as your name or email address, unless you give us permission[56].

## Partners who use our analytics services

People rely on our Products[57], like business accounts, professional tools and Facebook Pages, to run and promote their businesses. Businesses use our analytics services to understand more about how people are using their content, features, products and services.

To provide these services, we use the information we collect about you. We put this information into aggregate reports so that partners can see how well their content, features, products and services are performing and are able to understand things like users' experience with such content, products and services.

These reports aggregate information like:

- How many people interacted with our partners' content, products or services

- The general demographics and interests[55] of the people who interacted with it

- How people use our partners' products and services to connect to Meta Products and the performance of their connection and networks

Advertisers also receive other information. Read our policy about how we share information with advertisers.

## Partners who offer goods or services on our Products and commerce services platforms

When you choose to make a transaction[58], or otherwise choose to share information with a seller, creator, fundraiser, charity, payment services provider or commerce services platform[59], we share information with them and with any providers acting on their behalf.

Depending on how you interact with them, they receive:

- Information to complete your transaction, like order, payment, contact and shipping information

- Information to help ensure the security of the transaction, like information about your

device or connection

- Any information required by applicable regulation

- Other information you choose to share with them

For example, if you make a purchase from an Instagram shop using checkout, the shop will receive information to complete your transaction. This may include your order items, your contact details and shipping information. If the shop uses a payment services provider, such as PayPal, to facilitate the transaction, the provider will receive the transaction amount, a transaction description (to appear on your credit card statement) and your payment card information, such as cardholder name, card number, expiration date and billing address. Learn more about payments on Instagram.

### Integrated partners

When you choose to use integrated partners' products or services, they may receive information about you and your activity. Read the policy.

## Vendors

### Measurement vendors

We don't create every measurement and analytics report ourselves.

We share information (like whether people saw an ad or engaged with it) with our measurement vendors[60], who aggregate it to provide their reports.

For example, an advertiser might ask a measurement vendor to help figure out the impact its ads on Facebook have had on sales. The measurement vendor compares information from us about clicks on the advertiser's Facebook ads with information from the advertiser about product purchases. Then the measurement vendor creates and provides aggregated reports that show the advertiser how its ads are performing.

### Marketing vendors

We share information about you with marketing vendors[61]. For example, we share your device identifier or other identifiers with marketing vendors to help us serve you ads most

relevant to your interests.

Marketing vendors support our marketing and advertising efforts by:

- Serving our advertisements across the internet, including on mobile, desktop and connected television devices

- Tracking and categorizing your online and mobile app activity

- Providing us information about your interests and community and advertising interactions

These marketing vendors help us understand who might find our advertising most relevant to their interests, and which of our Products might interest you. This information can be used to personalize which of our ads are shown to you. Marketing vendors also use this information to measure response to our marketing efforts and the effectiveness of our advertising.

Learn more[62] about how to manage the Meta ads you see off our Products.

## Service providers

### Service providers

Service providers provide services to us that help us provide our Products to you. We share the information we have about you to receive these services, which include:

- Investigating suspicious activity

- Detecting and stopping threats to our personnel and property

- Facilitating payments

- Providing customer support

- Improving the functionality of our Products

- Providing technical infrastructure services

- Analyzing how our Products are used

- Conducting research and surveys

- Marketing and promoting our Products

# Third parties

### External researchers

We provide information to external researchers. They use it to conduct research that advances scholarship and innovation, and to promote safety, security and integrity.

Research goals include supporting:

- Our business or mission

- Social good. Learn more.

- Technological advancement

- Safety and security on our Products

- Public interest

- Health and well-being

When sharing information with external researchers, we ensure the privacy of our users is protected. Learn more about the privacy-safe research we support.

## Other third parties

We also share information with other third parties[54] in response to legal requests, to comply with applicable law or to prevent harm. Read the policy.

And if we sell or transfer all or part of our business to someone else, in some cases we'll give the new owner your information as part of that transaction, but only as the law allows.

53

### Partner

A person, business, organization or body using or integrating our Products to advertise,

market or support their products and services

## 54

## Third party

A person, business, organization or body that is not part of the Meta Companies

## 55

## General demographics and interests

For example, a bike shop creates a Page on Facebook and wants to place an ad to reach an audience of people in Atlanta interested in cycling. We determine whether someone fits in this audience based on, for example, whether they liked a Page about bikes. Then people in that audience could see the bike shop's ad.

You can see the "interests" assigned to you in your ad preferences and remove them if you want.

The bike shop can then see reports showing aggregated statistics about the audience seeing their ads and how their ads are performing. The reports would show statistics to the advertiser that, for example, most of the people who saw or clicked on their ad:

- Were women

- Were between the ages of 25 and 34

- Clicked on the ad from their phone

## 56

## When you might give us permission

For example, you might request more information from a business by clicking their ad in your Facebook Feed and submitting a form with your name and contact information. Then

the advertiser would receive the information you provided.

57

## What Products does this policy cover?



This policy describes the information we, Meta Platforms, Inc., process to provide Meta Products. Meta Products, which we also call "Products," include:

- Facebook

- Messenger

- Instagram (including apps like Boomerang and Threads)

- Facebook Portal products

- Meta Platforms Technologies Products, such as Meta Horizon Worlds or Meta Quest (when using a Facebook or Meta account)

- Shops

- Marketplace

- Spark AR

- Meta Business Tools

- Meta Audience Network

- Facebook View

- Meta Pay

- Meta checkout experiences

Some of our Products also have a supplemental privacy policy[63] that adds to the information provided in this policy.

58

## Transactions you might make

- Subscribing to premium content

- Buying, selling or using products

- Buying, selling or using services

- Donating to charities

59

## Commerce services platforms

Commerce services platforms provide a range of commerce services, including:

- Payments

- Marketing

- Shipping

- Customer engagement tools

60

## Measurement vendor

A third party that creates reports to help advertisers understand how their content and ads are performing. These reports also measure whether people took an action after seeing an ad.

61

## Marketing vendor

A third party that helps market or advertise Meta and our Products, measures the effectiveness of our own marketing campaigns and performs advertising research

62

## Manage the ads you see on our Products

Visit your ad preferences.

### Manage Meta ads you see off our Products

We advertise our own products and services on non-Meta ad platforms. We use marketing vendors to deliver these ads. Here's how to opt out of our tailored ads you see off our Products:

- **Cookie-based opt out:** If applicable and available in your jurisdiction, you may use the Digital Advertising Alliance industry opt-out platform, available in English and Spanish. Residents of Canada may use the Digital Advertising Alliance of Canada industry opt-out platform. If you apply certain ad blockers and tools to restrict cookies, it may interfere with your ability to opt out.

- **Mobile phone-based opt out:** Check your mobile device settings. Different manufacturers provide different ways to opt out of advertisements.

- **Other online identifiers:** You may use the NAI industry opt-out platform.

63

## Supplemental policies

| | |
|---|---|
| Facebook Portal products |  |
| Facebook View | |
| Free Basics | |
| Meta Platforms Technologies Products | |
| Oversight Board | |

# How do the Meta Companies work together?

**Highlights**

- Meta owns Facebook, Instagram, Messenger, Portal and the other Products covered by this policy

- Meta also owns the Meta Companies, which include WhatsApp

- Sometimes we share information within these Companies

- We do this to make new features or shared experiences between different products. Then you can do things like use WhatsApp to chat on Portal.

- We also share information, like your name and email address, to help verify your accounts, and check out suspicious activities. This helps us keep your accounts safe.



We are part of the Meta Companies that provide Meta Company Products. Meta Company Products include all the Meta Products[64] covered by this Policy, plus other products like WhatsApp, Novi and more.

We share information we collect, infrastructure, systems and technology with the other Meta Companies. Learn more about how we transfer information to other countries.

We also process information that we receive about you from other Meta Companies, according to their terms and policies and as permitted by applicable law. In some cases, Meta acts as a service provider[65] for other Meta Companies. We act on their behalf and in accordance with their instructions and terms.

## Why we share across the Meta Companies

Meta Products share information with other Meta Companies:

- To promote safety, security and integrity and comply with applicable laws

- To personalize offers, ads and other sponsored or commercial content

- To develop and provide features and integrations

- To understand how people use and interact with Meta Company Products

See some examples[66] of why we share.

## More resources

Review the privacy policies of the other Meta Companies
Facebook Help Center ⧉

---

64

## What Products does this policy cover?



This policy describes the information we, Meta Platforms, Inc., process to provide Meta Products. Meta Products, which we also call "Products," include:

- Facebook

- Messenger

- Instagram (including apps like Boomerang and Threads)

- Facebook Portal products

- Meta Platforms Technologies Products, such as Meta Horizon Worlds or Meta Quest (when using a Facebook or Meta account)

- Shops

- Marketplace

- Spark AR

- Meta Business Tools

- Meta Audience Network

- Facebook View

- Meta Pay

- Meta checkout experiences

Some of our Products also have a supplemental privacy policy[67] that adds to the information provided in this policy.

---

65

## Service provider

A person, business, organization or body that provides services to Meta or to our users on behalf of Meta. For example, our service providers do things like investigate suspicious activity and provide customer support.

---

66

## Why we share across the Meta Companies

**Promoting safety, security and integrity and complying with applicable law**

For example, we share information with Meta Companies that provide financial products and services to help them promote safety, security and integrity and comply with applicable law. This includes:

- Complying with their legal obligations

- Helping keep you and others safe

- Performing account verification

- Investigating suspicious activities

- Creating analytics

For these purposes, we might share your name, email address, who you're friends with and other account information within the Meta Companies.

**Developing and providing features and integrations**

For example, where available in your country, you can choose to use certain integrations that connect your WhatsApp experiences with other Meta Company Products. These integrations let you do things like:

- Use your Meta Pay account to pay for things on WhatsApp

- Chat with your friends on other Meta Company Products, such as Portal, by connecting your WhatsApp account

We also share information with Meta Companies to support innovation. For example, your videos can help train our products to recognize objects, like trees, or activities, like when a dog chases a ball. They can also help train tools that let people and businesses create content, like images and videos. This technology is used to help us offer new products or features in the future.

**Understanding how people use our products**

We count the number of unique users, monthly active users and daily active users on our products. This information helps us understand the community using our products and publicly share important trends about how our products are used.

67

# Supplemental policies

| Facebook Portal products | ⧉ |
| Facebook View | ⧉ |
| Free Basics | ⧉ |

| Meta Platforms Technologies Products |  |
| Oversight Board | |

# How can you manage or delete your information and exercise your rights?

**Highlights**

- You have rights to view and download the information we have about you

- You can use the settings in this section to manage your privacy

- You also can delete your account or specific account information, if you want to

We offer you a variety of tools to view, manage, download and delete your information below. You can also manage your information by visiting the settings of the Products you use. You may also have other privacy rights under applicable laws.

To exercise your rights, visit our Help Centers, your settings for Facebook and Instagram and your device-based settings.

## Take a privacy checkup

 Take a privacy checkup
Be guided through Facebook privacy settings

## View and manage your information

|  Access your information | > |
| Off-Facebook activity | ⓕ > |
| Ad preferences [68] | > |

 Manage your data

## Port, download or delete your information

Port your information [69] ⟩

Download your information ⟩

Delete your information or account [70] ⟩

You can learn more about how privacy works on Facebook and on Instagram, and in the Facebook Help Center. If you have questions about this policy, you can contact us as described below. In some countries, you may also be able to contact the Data Protection Officer for Meta Platforms, Inc., and depending on your jurisdiction, you may also contact your local Data Protection Authority ("DPA") directly.

68

## Manage the ads you see on our Products

Visit your ad preferences.

## Manage Meta ads you see off our Products

We advertise our own products and services on non-Meta ad platforms. We use marketing vendors to deliver these ads. Here's how to opt out of our tailored ads you see off our Products:

- **Cookie-based opt out:** If applicable and available in your jurisdiction, you may use the Digital Advertising Alliance industry opt-out platform, available in English and Spanish. Residents of Canada may use the Digital Advertising Alliance of Canada industry opt-out platform. If you apply certain ad blockers and tools to restrict cookies, it may interfere with your ability to opt out.

- **Mobile phone-based opt out:** Check your mobile device settings. Different manufacturers provide different ways to opt out of advertisements.

- **Other online identifiers:** You may use the NAI industry opt-out platform.

---

69

## Port your information

In certain cases and subject to applicable law, you have the right to port your information.

---

70

## Delete your information or account

To delete your information, you can:

- **Find and delete specific information.** We offer tools you can use to delete certain information. For example, you can use Delete buttons to delete content you've posted to your account. You can also use tools like activity log on Facebook to send content to the trash in bulk. When you delete content, it's no longer visible to other users. Visit the Facebook Help Center or Instagram Help Center to learn what happens when you delete your content or move it to trash.

- **Permanently delete your account.** If you delete your account on Facebook or Instagram, we delete your information, including the things you've posted, such as your photos and status updates, unless we need to keep it as described in "How long do we keep your information?" Once your account is permanently deleted you won't be able to reactivate it, and you won't be able to retrieve information, including content you've posted.

**How long does it take to delete your information?**

If you request that we delete your account or content, it may take up to 90 days to delete your information after we begin the account deletion process or receive a content deletion request. After the information is deleted, it may take us up to another 90 days to remove it from backups and disaster recovery.

If you leave your deleted content in your trash on Facebook or your Recently Deleted folder on Instagram, the deletion process will begin automatically in 30 days. Or you can start the deletion process right away by deleting the content from your trash or Recently

Deleted folder.

# How long do we keep your information?

**Highlights**

- We keep information for as long as we need it to provide a feature or service

- But you can request that we delete your information

- We'll delete that information unless we have to keep it for something else, like for legal reasons

We keep information as long as we need it to provide our Products, comply with legal obligations or protect our or other's interests. We decide how long we need information on a case-by-case basis. Here's what we consider when we decide:

- If we need it to operate or provide our Products. For example, we need to keep some of your information to maintain your account. Learn more[71].

- The feature we use it for, and how that feature works. For example, messages sent using Messenger's vanish mode are retained for less time than regular messages. Learn more[72].

- How long we need to retain the information to comply with certain legal obligations. See some examples[73].

- If we need it for other legitimate purposes, such as to prevent harm; investigate possible violations of our terms or policies; promote safety, security and integrity; or protect ourselves, including our rights, property or products

In some instances and for specific reasons, we'll keep information for an extended period of time. Read our policy[74] about when we may preserve your information.

71

## If we need it to operate or provide our Products

For example, we keep profile information, photos you've posted (and not deleted) and security information for the lifetime of your account.

And when you search for something on Facebook, we keep your search history until you clear the search in your activity log or delete your account. Once you clear a search or delete your account, it will no longer be visible to you, and it will be deleted[75].

But even if you don't clear your search or delete your account, within six months of your search we delete information about that search that isn't necessary to show you your search history, like information about the device you were using, or your location.

72

### The feature we use it for, and how that feature works



For example, May is planning a surprise party for Yang. She sends Cynthia the party details in Messenger using vanish mode so that the message will disappear. The message will no longer be visible to May once she leaves the chat, and Cynthia will see the message only the first time she opens the chat thread.

After Cynthia reads the message, the content is deleted after one hour. If Cynthia never reads it, it's deleted after 14 days.

73

## How long we need to retain the information to comply with certain legal obligations

For example, we retain information for as long as we need it for:

- A legal request or obligation, including obligations of Meta Companies or to comply with applicable law

- A governmental investigation

- A legal claim, complaint, litigation or regulatory proceedings

74

## Why we may preserve your information longer

Your information, including financial transaction data related to purchases or money transfers made on our Products, may be preserved and accessed for a longer time period if it's related to any of the following:

- A legal request or obligation, including obligations of Meta Companies or to comply with applicable law

- A governmental investigation

- An investigation of possible violations of our terms or policies

- To prevent harm

- For safety, security and integrity purposes

- To protect ourselves, including our rights, property or products

- If it's needed in relation to a legal claim, complaint, litigation or regulatory proceedings

See some examples[76].

In some cases, we may preserve your information based on the above reasons even after

you request deletion of your account or some of your content. We may also preserve information from accounts that have been disabled and content that has been removed for violations of our terms and policies.

75

## Delete your information or account

To delete your information, you can:

- **Find and delete specific information.** We offer tools you can use to delete certain information. For example, you can use Delete buttons to delete content you've posted to your account. You can also use tools like activity log on Facebook to send content to the trash in bulk. When you delete content, it's no longer visible to other users. Visit the Facebook Help Center or Instagram Help Center to learn what happens when you delete your content or move it to trash.

- **Permanently delete your account.** If you delete your account on Facebook or Instagram, we delete your information, including the things you've posted, such as your photos and status updates, unless we need to keep it as described in "How long do we keep your information?" Once your account is permanently deleted you won't be able to reactivate it, and you won't be able to retrieve information, including content you've posted.

**How long does it take to delete your information?**

If you request that we delete your account or content, it may take up to 90 days to delete your information after we begin the account deletion process or receive a content deletion request. After the information is deleted, it may take us up to another 90 days to remove it from backups and disaster recovery.

If you leave your deleted content in your trash on Facebook or your Recently Deleted folder on Instagram, the deletion process will begin automatically in 30 days. Or you can start the deletion process right away by deleting the content from your trash or Recently Deleted folder.

76

## Examples of why we might preserve your information

### To respond to a legal request

For example, we might preserve your information after you delete your account when we receive a valid legal request, such as a preservation order or search warrant, related to your account.

### To comply with applicable law

For example, we preserve certain information about purchases or transactions associated with an account, in line with Meta's accounting obligations.

### For safety, security and integrity purposes

For example, if we disable an account for violating our terms or policies, we preserve information about that user to prevent them from opening a new account.

We also might preserve some of your account information as part of our review of suspicious activity. This includes any suspicious activity associated with our financial products, like suspected money laundering or terrorist funding.

### For litigation

We may preserve your information where we deem it necessary for reasons related to a legal claim or complaint. For example, we may be required to defend ourselves in legal proceedings in a claim related to your information.

# How do we transfer information?

## Highlights

- Because we connect people all around the world, we need to transfer information all around the world, too

- When we do this, we follow international regulations to keep your information safe

## Why is information transferred to other countries?

We share the information we collect globally, both internally across our offices and data centers, and externally with our partners[77], measurement vendors[78], service providers[79] and other third parties[80]. Because Meta is global, with users, partners and employees around the world, transfers are necessary for a variety of reasons, including:

- So we can operate and provide the services stated in the terms of the Meta Product[81] you're using and this Policy. This includes allowing you to share information and connect with your family and friends around the globe.

- So we can fix, analyze and improve our Products

## Where is information transferred?

Your information will be transferred or transmitted to, or stored and processed in:

- Places we have infrastructure or data centers, including the United States, Ireland, Denmark and Sweden, among others

- Countries where Meta Company Products are available

- Other countries where our partners, vendors, service providers and other third parties are located outside of the country where you live, for purposes as described in this Policy

## How do we safeguard your information?

We rely on appropriate mechanisms[82] for international data transfers.

We also make sure that appropriate safeguards are in place whenever we transfer your information. For example, we encrypt your information when it's in transit over public networks to protect it from unauthorized access.

**More resources**

How information is safeguarded as it's transferred
Facebook Newsroom

77

## Partner

A person, business, organization or body using or integrating our Products to advertise, market or support their products and services

78

## Measurement vendor

A third party that creates reports to help advertisers understand how their content and ads are performing. These reports also measure whether people took an action after seeing an ad.

79

## Service provider

A person, business, organization or body that provides services to Meta or to our users on behalf of Meta. For example, our service providers do things like investigate suspicious activity and provide customer support.

80

## Third party

A person, business, organization or body that is not part of the Meta Companies

81

## What Products does this policy cover?



This policy describes the information we, Meta Platforms, Inc., process to provide Meta Products. Meta Products, which we also call "Products," include:

- Facebook

- Messenger

- Instagram (including apps like Boomerang and Threads)

- Facebook Portal products

- Meta Platforms Technologies Products, such as Meta Horizon Worlds or Meta Quest (when using a Facebook or Meta account)

- Shops

- Marketplace

- Spark AR

- Meta Business Tools

- Meta Audience Network

- Facebook View

- Meta Pay

- Meta checkout experiences

Some of our Products also have a supplemental privacy policy[83] that adds to the information provided in this policy.

82

## Mechanisms we use for global data transfers

We rely on appropriate mechanisms for international data transfers. For example, for information we collect:

- We utilize standard contractual clauses approved by the European Commission and by other relevant authorities.

- We rely on determinations from the European Commission, and from other relevant authorities, about whether other countries have adequate levels of data protection.

- We use equivalent mechanisms under applicable laws that apply to data transfers to the United States and other relevant countries.

83

## Supplemental policies

| Facebook Portal products | |
|---|---|
| Facebook View | |
| Free Basics | |
| Meta Platforms Technologies Products | |
| Oversight Board | |

# How do we respond to legal requests, comply with

# applicable law and prevent harm?

**Highlights**

- Sometimes we have to provide information to respond to legal requests when necessary

- If there's a law that says we need to keep your information for some reason, we need to comply with it. So we'll keep information to obey that law.

- We also sometimes keep information that we think will help prevent or stop bad activity, either on our Products or in the world

We access, preserve, use and share your information:

- In response to legal requests, like search warrants, court orders, production orders or subpoenas. These requests come from third parties[84] such as civil litigants, law enforcement and other government authorities. Learn more[85] about when we respond to legal requests.

- In accordance with applicable law

- To promote the safety, security and integrity of Meta Products[86], users, employees, property and the public. Learn more[87].

We may access or preserve your information for an extended amount of time. Learn more[88].

84

## Third party

A person, business, organization or body that is not part of the Meta Companies

85

## When we respond to legal requests

We respond to legal requests where we're required by law to do so, and at times where we're not compelled by law, but a response:

- May affect users in that jurisdiction, and

- Is consistent with internationally recognized standards including, for example, our Corporate Human Rights Policy.

Learn more about government requests and how we've responded.

86

## What Products does this policy cover?



This policy describes the information we, Meta Platforms, Inc., process to provide Meta Products. Meta Products, which we also call "Products," include:

- Facebook

- Messenger

- Instagram (including apps like Boomerang and Threads)

- Facebook Portal products

- Meta Platforms Technologies Products, such as Meta Horizon Worlds or Meta Quest (when using a Facebook or Meta account)

- Shops

- Marketplace

- Spark AR

- Meta Business Tools

- Meta Audience Network

- Facebook View

- Meta Pay

- Meta checkout experiences

Some of our Products also have a supplemental privacy policy[89] that adds to the information provided in this policy.

---

87

## How we promote safety, security and integrity

We share your information with law enforcement, government authorities, Meta Companies and other third parties (including industry peers) when we have a good faith belief it's necessary to detect, prevent and address a variety of situations, such as:

- Unauthorized use of our Products. See an example.[90]

- Violations of our terms and policies. See an example.[91]

- Investigating suspicious activity

- Protecting ourselves, including our rights, property, personnel or Products

- Preventing abuse, fraud, or other harmful or illegal activity, on and off our Products

- Protecting you or others, including as part of investigations or regulatory inquiries

- Emergency situations, such as risk of death or imminent bodily harm

88

# Why we may preserve your information longer

Your information, including financial transaction data related to purchases or money transfers made on our Products, may be preserved and accessed for a longer time period if it's related to any of the following:

- A legal request or obligation, including obligations of Meta Companies or to comply with applicable law

- A governmental investigation

- An investigation of possible violations of our terms or policies

- To prevent harm

- For safety, security and integrity purposes

- To protect ourselves, including our rights, property or products

- If it's needed in relation to a legal claim, complaint, litigation or regulatory proceedings

See some examples[92].

In some cases, we may preserve your information based on the above reasons even after you request deletion of your account or some of your content. We may also preserve information from accounts that have been disabled and content that has been removed for violations of our terms and policies.

89

# Supplemental policies

Facebook Portal products   ↗

Facebook View   ↗

Free Basics   ↗

Meta Platforms Technologies Products    

Oversight Board

---

90

## Unauthorized use of our Products

For example, if you unlawfully collect and use Facebook user data, we may share your information to defend ourselves against claims or in litigation.

---

91

## Violations of our terms and policies

For example, if you post threatening or harmful content, we may share your information across the Meta Companies to protect ourselves and others. This can include blocking your access to certain features or disabling your account across the Meta Companies.

---

92

## Examples of why we might preserve your information

**To respond to a legal request**

For example, we might preserve your information after you delete your account when we receive a valid legal request, such as a preservation order or search warrant, related to your account.

**To comply with applicable law**

For example, we preserve certain information about purchases or transactions associated with an account, in line with Meta's accounting obligations.

**For safety, security and integrity purposes**

For example, if we disable an account for violating our terms or policies, we preserve information about that user to prevent them from opening a new account.

We also might preserve some of your account information as part of our review of suspicious activity. This includes any suspicious activity associated with our financial products, like suspected money laundering or terrorist funding.

**For litigation**

We may preserve your information where we deem it necessary for reasons related to a legal claim or complaint. For example, we may be required to defend ourselves in legal proceedings in a claim related to your information.

## How will you know the policy has changed?

We'll notify you before we make material changes to this Policy. You'll have the opportunity to review the revised Policy before you choose to continue using our Products.

## Privacy notice for United States residents

You can learn more about the consumer privacy rights that may be available to you by reviewing the United States Regional Privacy Notice.

## How to contact Meta with questions

You can learn more about how privacy works on Facebook and on Instagram and in the Facebook Help Center. If you have questions about this Policy or have questions, complaints or requests regarding your information, you can contact us as described below.

You can contact us online or by mail at:

Meta Platforms, Inc.
ATTN: Privacy Operations
1601 Willow Road
Menlo Park, CA 94025

## Why and how we process your information

The categories of information we use, and why and how information is processed, are set out

below:

| Why and how we process your information | Information categories we use (see 'What Information do we collect?' for more information on each information category) The actual information we use depends on your factual circumstances, but could include any of the following: |
|---|---|
| Personalizing the Meta Products[93] (other than ads, see below): Our systems automatically process information we collect and store associated with you and others to assess and understand your interests and your preferences and provide you personalized experiences across the Meta Products in accordance with our terms. This is how we:<br><br>• Personalize features and content (such as your News Feed, Instagram Feed and Stories);<br><br>• Make suggestions for you (such as people you may know, groups or events that you may be interested in or topics that you may want to follow) on and off our products.<br><br>Learn more about how we use information about you to personalize your experience on and across Meta Products and how we choose the ads that you see. | Your activity and information you provide:<br><br>• Content you create, like posts, comments or audio<br><br>• Content you provide through our camera feature or your camera roll settings, or through our voice-enabled features<br><br>• Metadata[94] about content<br><br>• Types of content you view or interact with, and how you interact with it<br><br>• Apps and features you use, and what actions you take in them<br><br>• Purchases or other transactions you make<br><br>• Hashtags you use<br><br>• The time, frequency and duration of your activities on our Products<br><br>Friends, followers and other connections |

App, browser and device information:

- Device[95] characteristics and device software

- What you're doing on your device, like whether our app is in the foreground or if your mouse is moving (which can help tell humans from bots)

- Identifiers that tell your device apart from other users'

- Device signals

- Information you've shared through your device settings (like GPS location)

- Location-related information

- Information about the network you connect your device to

- Reports about our products' performance on your device

- Information from cookies and similar technologies

Information from partners, vendors and third parties

---

Providing ads on the Meta Products: Our systems automatically process limited categories of information that we've collected and stored to provide you with ads on the Meta Products in accordance with our terms.

Your activity and information you provide:

- Age

- The gender you provide

- Information about ads we show you

and how you engage with those ads

App, browser and device information:

- Location information

- Device characteristics and device software

---

Providing and improving our Meta Products: The provision of the Meta Products includes collecting, storing, and, where relevant, sharing, profiling, reviewing and curating, and in some instances not only automated processing but also manual (human) reviewing, to:

- Create and maintain your account and profile,

- Connect your Meta Products account, including your public profile information, to an integrated partner to sign in or share your information,

- Facilitate the sharing of content and status,

- Provide and curate features,

- Provide messaging services, the ability to make voice and video calls and connect with others,

- Provide advertising products,

- Understand and enable creation of content like text, images and videos, and

- Undertake analytics.

We also use information to develop, research and test improvements to our Products. We

Your activity and information you provide:

- Content you create, like posts, comments or audio

- Your public profile information (including your name, username and profile picture)

- Content you provide through our camera feature or your camera roll settings, or through our voice-enabled features

- Messages you send and receive, including their content, subject to applicable law

- Metadata about content and messages, subject to applicable law

- Types of content you view or interact with, and how you interact with it

- Apps and features you use, and what actions you take in them

- Purchases or other transactions you make, including truncated credit card information

use information we have to:

- See if a product is working correctly,

- Troubleshoot and fix it when it's not,

- Test out new products and features to see if they work,

- Get feedback on our ideas for products or features, and

- Conduct surveys and other research about what you like about our Products and brands and what we can do better.

- Hashtags you use

- The time, frequency and duration of your activities on our Products

Friends, followers and other connections

App, browser and device information:

- Device characteristics and device software

- What you're doing on your device, like whether our app is in the foreground or if your mouse is moving (which can help tell humans from bots)

- Identifiers that tell your device apart from other users'

- Device signals

- Information you've shared through your device settings

- Location-related information

- Information about the network you connect your device to, including your IP address[96]

- Information from cookies and similar technologies

Information from partners, vendors and third parties

Promoting safety, integrity and security on and across the Meta Products: The Meta

Your activity and information you provide::

Products are designed to research and help ensure the safety, integrity and security of those services and those people who enjoy them, on and off Meta Products. We process information we have associated with you and apply automated processing techniques and, in some instances, conduct manual (human) review to:

- Verify accounts and activity,

- Find and address violations of our terms or policies. In some cases, the decisions we make about violations are reviewed by the Oversight Board,

- Investigate suspicious activity,

- Detect, prevent and combat harmful or unlawful behavior, such as to review and, in some cases, remove content reported to us,

- Identify and combat disparities and racial bias against historically marginalized communities,

- Protect the life, physical or mental health, well-being or integrity of our users or others,

- Detect and prevent spam, other security matters and other bad experiences,

- Detect and stop threats to our personnel and property, and

- Maintain the integrity of our Products.

For more information on safety, integrity and security generally on Meta Products, visit the Facebook Security Help Center and Instagram Security Tips.

- Content you create, like posts, comments or audio

- Content you provide through our camera feature or your camera roll settings, or through our voice-enabled features

- Messages you send and receive, including their content, subject to applicable law

- Metadata about content and messages, subject to applicable law

- Types of content you view or interact with, and how you interact with it

- Apps and features you use, and what actions you take in them

- Purchases or other transactions you make, including truncated credit card information

- Hashtags you use

- The time, frequency and duration of your activities on our Products

Friends, followers and other connections

App, browser and device information:

- Device characteristics and device software

- What you're doing on your device, like whether our app is in the foreground or if your mouse is moving (which can help tell humans from bots)

- Identifiers that tell your device apart from other users'

- Device signals

- Information you've shared through your device settings

- Location-related information

- Information about the network you connect your device to, including your IP address

- Information from cookies and similar technologies

Information from partners, vendors and third parties

---

To communicate with you: We use information you've given us (like contact information on your profile) to send you a communication, like an e-mail or in-product notice, for example:

- We'll contact you via email or in-product notifications in relation to the Meta Products, product-related issues, research or to let you know about our terms and policies.

We also use contact information like your email address to respond when you contact us.

Your activity and information you provide:

- Contact information on your profile and your communications with us

- Content you create, like posts, comments or audio

- Content you provide through our camera feature or your camera roll settings, or through our voice-enabled features

App, browser and device information:

- Device characteristics and device software

- What you're doing on your device, like whether our app is in the foreground or if your mouse is

moving (which can help tell humans from bots)

- Identifiers that tell your device apart from other users'

- Device signals

- Information you've shared through your device settings

- Location-related information

- Information about the network you connect your device to, including your IP address

- Information from cookies and similar technologies.

---

Transferring, storing or processing your information across borders, including from and to the United States and other countries: We share information we collect globally, both internally across our offices and data centers and externally with our partners[97], third parties[98] and service providers[99]. Because Meta is global, with users, partners, vendors and employees around the world, transfers are necessary:

- To operate and provide the services described in the terms that apply to the Meta Product(s) you are using. This includes allowing you to share information and connect with your family and friends around the globe; and

- To fix, analyze and improve our Products.

For more information, see the "How do we

Your activity and information you provide:

- Content you create, like posts, comments or audio

- Content you provide through our camera feature or your camera roll settings, or through our voice-enabled features

- Metadata about content and messages, subject to applicable law

- Types of content you view or interact with, and how you interact with it

- Apps and features you use, and what actions you take in them

- Purchases or other transactions you

| | |
|---|---|
| transfer information?" section of the Meta Privacy Policy. | • make, including truncated credit card information<br><br>• Hashtags you use<br><br>• The time, frequency and duration of your activities on our Products<br><br>Friends, followers and other connections<br><br>App, browser and device information:<br><br>• Device characteristics and device software<br><br>• What you're doing on your device, like whether our app is in the foreground or if your mouse is moving (which can help tell humans from bots)<br><br>• Identifiers that tell your advice apart from other users'<br><br>• Device signals<br><br>• Information you've shared through your device settings<br><br>• Location-related information<br><br>• Information about the network you connect your device to, including your IP address<br><br>• Information from cookies and similar technologies<br><br>Information from partners, vendors and third parties |

| | |
|---|---|
| Processing information subject to special protections under applicable laws that you provide so we can share it with those you choose, to provide, personalize and improve our Products and to undertake analytics. We'll collect, store, publish and apply automated, or sometimes manual (human), processing for these purposes. | **Your activity and information you provide:**<br><br>• Any information with special protections that you choose to provide, such as your religious views, your sexual orientation, political views, health, racial or ethnic origin, philosophical beliefs or trade union membership, or as part of surveys you choose to participate in, and where you have given your explicit consent |
| Receiving and using information from third parties to tailor the ads you see: We'll use information that advertisers, businesses and other partners provide us about activity off Meta Products that we have associated with you to personalize ads that we show you on Meta Products, and on websites, apps and devices that use our advertising services. We receive this information whether or not you're logged in or have an account on our Products. See the Cookies Policy for more information. | **Your activity and information you provide:**<br><br>• Information and content you provide, such as your name or email address<br><br>**Information from partners, vendors and third parties** |
| Sharing your contact, profile or other information with third parties upon your request: The type of third party and categories of information shared depend on the circumstances of what you ask us to share. For example:<br><br>• We share your email (or other contact information) or other information you might choose when you direct us to share it with an advertiser so they can contact you with additional information about a promoted | **Your activity and information you provide:**<br><br>• Information such as your contact or profile information<br><br>• Content you create, like posts or comments |

product, and

- If you choose to integrate other apps, games or websites with Meta Products and log in, we'll share your information with the app, game or website to log you in.

---

Providing measurement, analytics and business services:

Our systems automatically, as well as with some manual (human) processing, process information we have collected and stored about you and others. We use this information to:

- Provide insights and measurement reports to businesses, advertisers and other partners to help them measure the effectiveness and distribution of their or their clients' ads, content and services, to understand the kinds of people who are seeing their content and ads, and how their content and ads are performing on and off Meta Products, and

- Provide aggregated user analytics and insights reports that help businesses, advertisers and other partners better understand the audiences with whom they may want to connect, as well as the types of people who use their services and how people interact with their websites, apps and services.

Your activity and information you provide:

- Content you create, like posts, comments or audio

- Content you provide through our camera feature or your camera roll settings, or through our voice-enabled features

- Types of content you view or interact with, and how you interact with it

- Apps and features you use, and what actions you take in them

- Purchases or other transactions you make

- Hashtags you use

- The time, frequency and duration of your activities on our Products

Friends, followers and other connections

App, browser and device information:

- Device characteristics and device software

- What you're doing on your device,

|  | like whether our app is in the foreground or if your mouse is moving (which can help tell humans from bots) |
|---|---|
|  | • Identifiers that tell your device apart from other users |
|  | • Device signals |
|  | • Information you've shared through your device settings |
|  | • Location-related information |
|  | • Information about the network you connect your device to, including your IP address |
|  | • Information from cookies and similar technologies |
| Sharing of information across the Meta Companies:<br><br>• To provide a seamless, consistent and richer, innovative experience across the Meta Company Products to enable cross app interactions, sharing, viewing and engaging with content, including posts and videos. | **Your activity and information you provide:**<br><br>• Content you create, like posts, comments or audio<br><br>• Content you provide through our camera feature or your camera roll settings, or through our voice-enabled features<br><br>• Metadata about content<br><br>• Types of content you view or interact with, and how you interact with it<br><br>• Apps and features you use, and what actions you take in them<br><br>• Purchases or other transactions you |

make

- Hashtags you use

- The time, frequency and duration of your activities on our Products

Friends, followers and other connections

App, browser and device information:

- Device characteristics and device software

- What you're doing on your device, like whether our app is in the foreground or if your mouse is moving (which can help tell humans from bots)

- Identifiers that tell your device apart from other users'

- Device signals

- Information you've shared through your device settings

- Location-related information

- Information about the network you connect your device to, including your IP address

- Information from cookies and similar technologies

| | |
|---|---|
| Business intelligence and analytics: | Your activity and information you provide: |
| - To understand, in aggregate, your usage of and across our Products, to accurately | - Content you create, like posts, |

count people and businesses; and

- To validate metrics directly related to these, in order to inform and improve product direction and development and to adhere to (shareholder/earning) reporting obligations.

comments or audio

- Content you provide through our camera feature or your camera roll settings, or through our voice-enabled features

- Metadata about content and messages, subject to applicable law

- Types of content you view or interact with, and how you interact with it

- Apps and features you use, and what actions you take in them

- Purchases or other transactions you make

- Hashtags you use

- The time, frequency and duration of your activities on our Products

Friends, followers and other connections

App, browser and device information:

- Device characteristics and device software

- What you're doing on your device, like whether our app is in the foreground or if your mouse is moving (which can help tell humans from bots)

- Identifiers that tell your device apart from other users'

- Device signals

|  | • Information you've shared through your device settings |
|  | • Location-related information |
|  | • Information about the network you connect your device to, including your IP address |
|  | • Information from cookies and similar technologies |
|  | Information from partners, vendors and third parties |
| Identifying you as a Meta Product user and personalizing the ads we show you through Meta Audience Network when you visit other apps:<br><br>• When we show you ads through Meta Audience Network when you visit other apps, our systems automatically process the information we have collected and stored about you and others to identify you as a Meta Product user and tailor the ads you see. | Your activity and information you provide:<br><br>• Information you provide<br><br>• Content you create, like posts, comments or audio<br><br>• Content you provide through our camera feature or your camera roll settings, or through our voice-enabled features<br><br>• Metadata about content<br><br>• Types of content you view or interact with, and how you interact with it<br><br>• Apps and features you use, and what actions you take in them<br><br>• Purchases or other transactions you make<br><br>• Hashtags you use |

|  |  |
|---|---|
|  | • The time, frequency and duration of your activities on our Products |
|  | Friends, followers and other connections |
|  | App, browser and device information: |
|  | • Device characteristics and device software |
|  | • What you're doing on your device, like whether our app is in the foreground or if your mouse is moving (which can help tell humans from bots) |
|  | • Identifiers that tell your device apart from other users' |
|  | • Device signals |
|  | • Information you've shared through your device settings |
|  | • Information about the network you connect your device to, including your IP address |
|  | • Information from cookies and similar technologies |
| Providing marketing communications to you: | Your activity and information you provide: |
| • Depending on your settings and subject to applicable law, we'll share marketing communications with you. | • Information and content you provide, including your contact information like email address |
| • We'll collect and store your information and use it to send marketing communications to you, like an email, subject to applicable laws. | App, browser and device information: |
|  | • Device identifiers |

Research and innovate for social good:

- We carry out surveys and use information (including from researchers we collaborate with) to conduct and support research and innovation on topics of general social welfare, technological advancement, public interest, health and well-being.

- For example, we analyze information that we have about migration patterns during crises. This helps relief organizations get aid to the right places.

- We collect, store, combine, analyze and apply automatic processing techniques like aggregation of information as well as manual (human) review, and share information, as necessary to research and innovate for social good in this way. We do this to do things like create COVID-19 forecasting models.

Learn more about our research programs.

Your activity and information you provide:

- Content you create, like posts, comments or audio

- Content you provide through our camera feature or your camera roll settings, or through our voice-enabled features

- Metadata about content and messages, subject to applicable law

- Types of content you view or interact with, and how you interact with it

- Apps and features you use, and what actions you take in them

- Purchases or other transactions you make

- Hashtags you use

- The time, frequency and duration of your activities on our Products

Friends, followers and other connections

App, browser and device information:

- Device characteristics and device software

- What you're doing on your device, like whether our app is in the foreground or if your mouse is moving (which can help tell humans

|  |  |
|---|---|
| | from bots)<br><br>• Identifiers that tell your device apart from other users'<br><br>• Device signals<br><br>• Information you've shared through your device settings<br><br>• Location-related information<br><br>• Information about the network you connect your device to, including your IP address<br><br>• Information from cookies and similar technologies<br><br>Information from partners, vendors and third parties |
| Anonymizing your information<br><br>In some cases, we anonymize information we have associated with you, such as your activity on and off our Products, and use the resulting information, for example, to provide and improve our Meta Products, including ads. | Your activity and information you provide:<br><br>• Content you create, like posts, comments or audio<br><br>• Content you provide through our camera feature or your camera roll settings, or through our voice-enabled features<br><br>• Metadata about content<br><br>• Types of content you view or interact with, and how you interact with it<br><br>• Apps and features you use, and what actions you take in them |

- Purchases or other transactions you make

- Hashtags you use

- The time, frequency and duration of your activities on our Products

Friends, followers and other connections

App, browser and device information:

- Device characteristics and device software

- What you're doing on your device, like whether our app is in the foreground or if your mouse is moving (which can help tell humans from bots)

- Identifiers that tell your device apart from other users'

- Device signals

- Information you've shared through your device settings

- Location-related information

- Information about the network you connect your device to, including your IP address

- Information from cookies and similar technologies

Information from partners, vendors and third parties

Sharing information with others, including law enforcement and to respond to legal requests.

See the "How do we respond to legal requests, prevent harm and promote safety and integrity?" section of the Meta Privacy Policy for more for information on when we share information with law enforcement and others.

The categories of information we access, preserve, use and share depend on the specific circumstances. For example, responses to legal requests where not compelled by law will typically include limited information (such as contact details and login information).

However, the information we process will depend on the purposes, which could include the following:

- In response to legal requests from third parties such as civil litigants, law enforcement and other government authorities

- To comply with applicable law or legitimate legal purposes

- To promote the safety, security and integrity of Meta Companies, Meta Products, users, employees, property and the public

Learn more about how we promote safety, security and integrity.

**Your activity and information you provide:**

- Content you create, like posts, comments or audio

- Content you provide through our camera feature or your camera roll settings, or through our voice-enabled features

- Metadata about content, subject to applicable law

- Types of content you view or interact with, and how you interact with it

- Apps and features you use, and what actions you take in them

- Purchases or other transactions you make

- Hashtags you use

**Friends, followers and other connections**

**App, browser and device information:**

- Device characteristics and device software

- What you're doing on your device, like whether our app is in the foreground or if your mouse is moving (which can help tell humans from bots)

- Identifiers that tell your device apart from other users'

- Device signals

- Information you've shared through your device settings

- Location-related information

- Information about the network you connect your device to, including your IP address

- Information from cookies and similar technologies

Information from partners, vendors and third parties

---

For processing information when the law requires it: Where we are under an obligation to disclose information such as, for example, if we receive a valid legal request for certain information such as a search warrant, we will access, preserve and/or share your information with regulators, law enforcement or others.

The way in which the information will be processed depends on the specific circumstances. See the "How do we respond to legal requests, prevent harm and promote safety and integrity?" section of the Meta Privacy Policy for more. "Information for Law Enforcement Authorities" provides information on the operational guidelines law enforcement needs to follow.

The categories of information depend on the specific circumstances of each mandatory request or obligation. Only the information necessary to comply with the relevant legal obligation will be shared or otherwise processed. For example, for civil matters, this will typically include limited information (such as contact details and login information). However, depending on the circumstances it could include the following:

Your activity and information you provide:

- Content you create, like posts, comments or audio

- Content you provide through our camera feature or your camera roll settings, or through our voice-enabled features

- Messages you send and receive, including their content, subject to

applicable law

- Metadata about content and messages, subject to applicable law

- Types of content you view or interact with, and how you interact with it

- Apps and features you use, and what actions you take in them

- Purchases or other transactions you make, including truncated credit card information

- Hashtags you use

- The time, frequency and duration of your activities on our Products

Friends, followers and other connections

App, browser and device information:

- Device characteristics and device software

- What you're doing on your device, like whether our app is in the foreground or if your mouse is moving (which can help tell humans from bots)

- Identifiers that tell your device apart from other users'

- Device signals

- Information you've shared through your device settings

- Location-related information

- Information about the network you connect your device to, including your IP address

- Information from cookies and similar technologies

Information from partners, vendors and third parties

---

93

## What Products does this policy cover?



This policy describes the information we, Meta Platforms, Inc., process to provide Meta Products. Meta Products, which we also call "Products," include:

- Facebook

- Messenger

- Instagram (including apps like Boomerang and Threads)

- Facebook Portal products

- Meta Platforms Technologies Products, such as Meta Horizon Worlds or Meta Quest

(when using a Facebook or Meta account)

- Shops

- Marketplace

- Spark AR

- Meta Business Tools

- Meta Audience Network

- Facebook View

- Meta Pay

- Meta checkout experiences

Some of our Products also have a supplemental privacy policy[100] that adds to the information provided in this policy.

---

94

## Metadata

- Information about the content itself, like the location where a photo was taken or the date a file was created

- Information about the message itself, like the type of message or the date and time it was sent

---

95

## Device

Devices include computers, phones, hardware, connected TVs, Portal devices and other web-connected devices.

96

## IP address

Stands for "internet protocol address." It's a unique number assigned to a device, like a phone or computer, that allows it to communicate over the internet. Numbers are assigned according to standard guidelines, or protocols.

Just like you need a mailing address to receive a letter from a friend, your device needs an IP address to receive information on the internet.

97

## Partner

A person, business, organization or body using or integrating our Products to advertise, market or support their products and services

98

## Third party

A person, business, organization or body that is not part of the Meta Companies

99

## Service provider

A person, business, organization or body that provides services to Meta or to our users on behalf of Meta. For example, our service providers do things like investigate suspicious activity and provide customer support.

100

## Supplemental policies

Facebook Portal products 

Facebook View

Free Basics

Meta Platforms Technologies Products

Oversight Board

**EXHIBIT F**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DRICKEY JACKSON, individually and
on behalf of all others similarly situated,

Plaintiff,

v.

AMAZON.COM, INC.,

Defendant.

Case No.:  3:20-cv-02365-WQH-BGS

**STIPULATED PROTECTIVE
ORDER**

Plaintiff Drickey Jackson ("Plaintiff") and Defendant Amazon.com, Inc. ("Amazon") stipulate to and request that the Court enter the following Stipulated Protective Order:

<u>**PURPOSES AND LIMITATIONS**</u>

The Court recognizes that at least some of the documents and information being sought through discovery in the above-captioned action are normally kept confidential by the parties. The parties have agreed to be bound by the terms of this Protective Order ("Order") in this action.

The Disclosure or Discovery Materials to be exchanged throughout the course of the litigation between the parties may contain trade secret or other confidential research, technical, cost, price, marketing, or other commercial information, as is contemplated by

1

Federal Rule of Civil Procedure 26(c)(1)(G). The purpose of this Order is to protect the confidentiality of such materials as much as is practical. The parties further acknowledge that, without separate court order, this Stipulated Protective Order does not change, amend, or circumvent any court rule or local rule.

## CONFIDENTIAL INFORMATION AND PROTECTED MATERIAL

1.     As used in this order, "Confidential Information" shall mean information or tangible things for which there is good cause for secrecy under Federal Rule of Civil Procedure 26(c). Confidential Information does not include any information that:

        a.     is publicly available at the time of disclosure;

        b.     becomes publicly available after disclosure through no fault of the Receiving Party (defined below);

        c.     was known to the Receiving Party prior to disclosure; or

        d.     the Receiving Party lawfully receives at a later date from a third Party without restriction as to disclosure.

2.     A Party may designate Confidential Information as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" as set forth in paragraphs 14 and 15 below.

3.     The term "Protected Material" shall mean any Disclosure or Discovery Material that is designated by a Designating Party as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in accordance with paragraphs 14 and 15 unless the designation is challenged and (a) the Court decides such material is not entitled to protection as Confidential Information; (b) the Designating Party fails to apply to the Court for an order holding that the material is entitled to protection within the time period specified below; or (c) the Designating Party withdraws its confidentiality designation in writing.

4.     The protections conferred by this Stipulation and Order cover not only Protected Material, but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and

2

(3) any testimony, conversations, or presentations by parties or their Counsel that might reveal Protected Material.

## OTHER DEFINITIONS

5.     The terms "Party" and "Parties" shall mean the named parties to this action, including all of their officers, directors, consultants, retained experts, and counsel (and their support staff).

6.     The terms "Non-Party" and "Non-Parties" shall mean any persons or entities other than a Party.

7.     The term "Disclosure or Discovery Materials" shall mean all items or information that are produced or generated in responses to discovery requests in this matter, regardless of the medium or manner generated, stored, or maintained, including but not limited to: documents; correspondence; memoranda; bulletins; blueprints; specifications; customer lists or other material identifying customers or potential customers; price lists or schedules or other matter identifying pricing or pricing strategy; minutes; telegrams; letters; statements; cancelled checks; contracts; invoices; drafts; books of account; worksheets; notes of conversations; desk diaries; appointment books; expense accounts; recordings; photographs; computer screen shots; motion pictures; compilations from which information can be obtained and translated into reasonably usable form through detection devices; sketches; drawings; notes (including laboratory notebooks and records); reports; instructions; disclosures; other writings; models and prototypes and other physical objects.

8.     The term "Producing Party" shall mean a Party or Non-Party that produces Disclosure or Discovery Material in this action.

9.     The term "Receiving Party" shall mean a Party that receives Disclosure or Discovery Material from a Producing Party.

10.    The term "Designating Party" shall mean a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery requests as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." The Designating Party bears the burden of establishing good cause for the confidentiality

of all such information or items.

11.     The term "Challenging Party" shall mean a Party that challenges a Designating Party's confidentiality designation.

12.     The term "Counsel" will mean outside Counsel of record, and other attorneys, paralegals, secretaries, and other support staff employed in the law firms identified below: Paul, Weiss, Rifkind, Wharton & Garrison LLP; and Bursor & Fisher, P.A. "Counsel" also includes in-house attorneys for Amazon.

13.     The term "Privileged Material" shall mean information that a Party claims to be privileged or protected by the attorney-client privilege or attorney work product protection.

### **GENERAL RULES**

14.     Each Party that produces or discloses any Disclosure or Discovery Materials, including documents and communications produced in response to requests for production, answers to interrogatories, responses to requests for admission, trial testimony, deposition testimony, and transcripts of trial testimony and depositions, or other information that the Producing Party believes should be subject to this Protective Order, may designate Disclosure or Discovery Materials as "CONFIDENTIAL" if, in the good faith belief of such Party and its Counsel, the unrestricted disclosure of such information could be potentially prejudicial to the business or operations of such Party.

15.     Each Party that produces or discloses any Disclosure or Discovery Materials, including documents and communications produced in response to requests for production, answers to interrogatories, responses to requests for admission, trial testimony, deposition testimony, and transcripts of trial testimony and depositions, or other information that the Producing Party believes should be subject to this Protective Order, may designate Disclosure or Discovery Materials as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" if, in the good faith belief of such Party and its Counsel, the unrestricted disclosure of such information would create a substantial risk of serious harm that could not be avoided by less restrictive means.

16.     In the event the Producing Party elects to produce Disclosure or Discovery Materials for inspection, no marking need be made by the Producing Party in advance of the initial inspection. For purposes of the initial inspection, all Disclosure or Discovery Materials produced will be considered as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," and must be treated as such pursuant to the terms of this Order. Thereafter, upon selection of specified Disclosure or Discovery Materials for copying by the inspecting Party, the Producing Party must, within a reasonable time prior to producing those Disclosure or Discovery Materials to the inspecting Party, mark the copies of those Discovery Materials that contain Confidential Information with the appropriate confidentiality marking.

17.     Whenever a deposition taken on behalf of any Party involves a disclosure of Protected Material:

a.     the deposition or portions of the deposition must be designated as containing Confidential Information subject to the provisions of this Order; such designation must be made on the record whenever possible, but a Party may designate portions of depositions as containing Confidential Information after transcription of the proceedings; a Party will have until fourteen days after receipt of the final deposition transcript to inform the other Party to the action of the portions of the transcript to be designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY";

b.     the Producing Party will have the right to exclude from attendance at the deposition, during such time as the Confidential Information is to be disclosed, any person other than the deponent, Counsel (including their staff and associates), the court reporter, the videographer, and the person(s) agreed upon pursuant to paragraph 19;

c.     the originals and all copies of the deposition transcripts must bear the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL –

5

ATTORNEYS' EYES ONLY," as appropriate, on the cover page;

d.    where the entire deposition transcript is not designated as Protected Material, but instead a portion is so designated, the portions so designated shall be clearly marked (e.g., by making appropriate markings in the margins or by highlighting the relevant portions of text); and the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" shall be affixed on the first page and at the bottom of each transcript page containing Protected Material; and

e.    a deposition transcript containing Protected Material must not be presented to a court for filing or otherwise verbally presented at a hearing unless it can be accomplished under seal, identified as being subject to this Order, and protected from being accessed except by order of this Court.

18.    Protected Material must not be disclosed by the Receiving Party to anyone other than those persons designated within this Order and must be handled in the manner set forth below unless and until such designation is removed either by agreement of the parties, or by order of the Court and, in any event, Protected Material must not be used for any purpose other than in connection with this litigation.

19.    Protected Material may be viewed by independent experts and any staff or employees of independent experts retained by any Party only under the conditions set forth in this paragraph. The right of any independent expert to receive Protected Material will be subject to the advance approval of such expert by the Producing Party or by permission of the Court.

a.    The Party seeking approval to provide Protected Material designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" to an independent expert must, in advance of providing any such material to the independent expert, make a written notification to the Producing Party that (1)

6

sets forth the full name and curriculum vitae of the proposed independent expert, (2) identifies the city and state of the independent expert's primary residence, and (3) includes an executed copy of the form attached hereto as Exhibit A.

b. Any objection by the Producing Party to an independent expert receiving Protected Material must be made in writing within fourteen days following receipt of the information set forth above.

c. Protected Material may be disclosed to an independent expert if the fourteen-day period has passed and no objection has been made. The approval of independent experts must not be unreasonably withheld.

20. Protected Material designated as "CONFIDENTIAL" may be viewed only by the Receiving Party, Counsel for the Receiving Party, witnesses in the present litigation in the presence of Counsel, independent experts (pursuant to the terms of paragraph 19), court personnel, and the individuals listed below, provided each such individual has read this Order in advance of disclosure and has executed the form attached hereto as Exhibit A:

a. employees of a Party who are required to participate in policy decisions with reference to this action;

b. deponents during the course of their deposition;

c. technical personnel of the Parties with whom Counsel for the Parties find it necessary to consult, in the discretion of such Counsel, in preparation for trial of this action;

d. professional jury or trial consultants; and

e. stenographic and clerical employees associated with the individuals identified above (though counsel and their paralegals and staff do not need to sign the form attached hereto as Exhibit A).

21. Protected Material designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" may be viewed only by Counsel for the Receiving Party, independent experts (pursuant to the terms of paragraph 19), deponents during the course

7

1  of their deposition, court personnel, and stenographic and clerical employees associated

2  with all such individuals (though counsel and their paralegals and staff do not need to sign

3  the form attached hereto as Exhibit A), provided each such individual has read this Order

4  in advance of disclosure and has executed the form attached hereto as Exhibit A.

5        22.    With respect to Protected Material, any person indicated on the face of the

6  document to be its originator, author, or a recipient of a copy of the document may be

7  shown the same, but may not distribute the Protected Material to other persons.

8        23.    All Protected Material and reproductions of that information must be retained

9  in the custody of Counsel for the Receiving Party, except that independent experts

10  authorized to view such information may retain custody of copies as necessary for their

11  participation in this litigation.

12        24.    Before any Protected Material is filed with the Court for any purpose, the

13  Party seeking to file the Protected Material must seek permission from the Court to file the

14  material under seal. No document shall be filed under seal unless Counsel secures a court

15  order allowing the filing of a document under seal. An application to file a document under

16  seal shall be served on opposing counsel, and on the Producing Party, if different from

17  opposing counsel. If opposing counsel, or the Producing Party, wishes to oppose the

18  application, he/she must contact the chambers of the judge who will rule on the application,

19  to notify the judge's staff that an opposition to the application will be filed. If an application

20  to file a document under seal is granted by the Honorable Bernard G. Skomal, United States

21  Magistrate Judge, a redacted version of the document shall be e-filed. A courtesy copy of

22  the unredacted document shall be delivered to Judge Skomal's chambers.

23        25.    At any stage of these proceedings, any Party may object to a designation of

24  Disclosure or Discovery Materials as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL

25  – ATTORNEYS' EYES ONLY." The Party objecting to the designation must notify, in

26  writing, Counsel for the Designating Party of the objected-to Disclosure or Discovery

27  Materials and the grounds for the objection. If the dispute is not resolved consensually

28  between the Parties, the Parties shall follow the Discovery Dispute procedures outlined in

Section V of Judge Skomal's Chambers Rules, within twenty-one days of the initial notice of objection or within fourteen days of the parties' agreement that the meet and confer process will not resolve their dispute, whichever is earlier. The Disclosure or Discovery Materials at issue must be treated as Protected Material until the Court has ruled on the objection or the matter has been otherwise resolved.

26.     Counsel for each Party and each person receiving Protected Material must take reasonable precautions to prevent the unauthorized disclosure of such information. If Protected Material is disclosed to any person other than a person authorized by this Order, the Party responsible for the unauthorized disclosure must immediately bring all pertinent facts relating to the unauthorized disclosure to the attention of the other Parties and, without prejudice to any rights and remedies of the other Parties, make every effort to prevent further disclosure by the person(s) receiving the unauthorized disclosure.

27.     No Party will be responsible to another Party for disclosure of Protected Material under this Order if the information in question is not labeled or otherwise identified as such in accordance with this Order.

28.     If a Party, through inadvertence or otherwise, produces or otherwise discloses Protected Material without labeling or marking or otherwise designating it as such in accordance with this Order, the Producing Party shall give written notice to the Receiving Party that the document or thing produced is deemed Protected Material, and that the document or thing produced should be treated as   "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." The Receiving Party must treat the Disclosure or Discovery Materials as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" once the Designating Party so notifies the Receiving Party. If the Receiving Party has disclosed the Disclosure or Discovery Materials before receiving notice of the designation, the Receiving Party must notify the Designating Party in writing of each such disclosure. Counsel will agree on a mutually acceptable manner of labeling or marking inadvertently produced Disclosure or Discovery Materials as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

## PROCEDURES FOR DESIGNATION OF PRIVILEGED MATERIAL AND DISCLOSURE OF THE SAME

29.    If a party, through inadvertence, produces or otherwise discloses Privileged Material, the Parties shall follow this Order, which is entered pursuant to Rule 502(d) of the Federal Rules of Evidence. Subject to the provisions of this Order, the disclosure of Privileged Material will not constitute or be deemed a waiver or forfeiture – in this or any other action – of any claim of privilege or work product protection that the Producing Party would otherwise be entitled to assert with respect to the Privileged Material and its subject matter. This Order shall be interpreted to provide the maximum protection allowed under applicable law. For the avoidance of doubt, the provisions of Federal Rule of Evidence 502(b) are inapplicable to the disclosure of Privileged Material under this Order.

30.    The process for handling and return of disclosed Privileged Material shall be as follows:

a.    If the Producing Party has disclosed or made available to the Receiving Party information it claims to be Privileged Material, the Producing Party may notify the Receiving Party of its claim and the basis for it ("Privileged Material Notice").

b.    Upon such notification, the Receiving Party must (i) take reasonable efforts pursuant to Rule 26 of the Federal Rules of Civil Procedure to promptly return, sequester, or destroy the Privileged Material, any reasonably accessible copies it has, and any work product reflecting the contents of the Privileged Material; (ii) not use or disclose the information until the privilege claim is resolved; and (iii) take reasonable steps to retrieve the information if the Receiving Party disclosed it to any other person or entity before receiving notice.

c.    For purposes of this Order, Privileged Material that is not reasonably accessible because of undue burden or cost must be sequestered.

d.    Upon the request of the Producing Party, the Receiving Party shall

10

3:20-cv-02365-WQH-BGS

provide a certification to the Producing Party that it has undertaken the foregoing efforts, and that it will cease further review, dissemination, and use of the Privileged Material.

31. The process for contesting a claim that information is Privileged Material shall be as follows:

a. If the Receiving Party contests the claim of information as being Privileged Material, the Receiving Party must, within seven days of receipt of the Privileged Material Notice, notify the Producing Party in writing of the Receiving Party's objection.

b. Following the receipt of such an objection, the Receiving Party and the Producing Party shall meet and confer in an effort to resolve any disagreement regarding the Producing Party's designation of the material as privileged or protected.

c. If the parties cannot resolve their disagreement, then the Receiving Party may promptly present the issue to the Court for a determination of the Producing Party's claim of privilege or protection by submitting any document(s) in dispute under seal in compliance with Fed. R. Civ. P. 26(b)(5)(B). To the extent that any related legal briefing refers, in any way, to the contents of the Privileged Material, all such portions of the briefing shall be filed under seal. Any party making a motion to the Court for an order compelling disclosure of the information claimed as unprotected must not assert as a ground for compelling disclosure the fact or circumstances of the disclosure.

d. While any such motion is pending, the Privileged Material subject to that motion will be treated as privileged until the Court rules. If the Court determines that the material at issue is privileged or protected, the Receiving Party must promptly return, sequester, or destroy the Privileged Material, any reasonably accessible copies it has, and any

11

1    work product reflecting the contents of the Privileged Material.

2        e.    If the Receiving Party, after making an objection to the Producing

3    Party, does not apply to the court for a ruling on the designation of the

4    Privileged Material at issue as privileged or protected within thirty days

5    from the receipt of the Privileged Material Notice (regardless of

6    whether parties met and conferred on the subject), or such later date as

7    the Producing Party and the Receiving Party may agree, consistent with

8    paragraph V of Judge Skomal's Chambers Rules, the Disclosure or

9    Discovery Materials in question shall be deemed privileged or

10   protected, in which case the Receiving Party must promptly return,

11   sequester, or destroy the Privileged Material, any reasonably accessible

12   copies it has, and any work product reflecting the contents of the

13   Privileged Material.

14       f.    The Producing Party retains the burden of establishing the privileged or

15   protected nature of the Privileged Material.

16       g.    The Producing Party must preserve the information until the claim is

17   resolved.

18       h.    The parties may stipulate to extend the time periods set forth in

19   paragraphs (a) and (f).

20       32.    Nothing within this Order will prejudice the right of any Party to object to the

21   production of any Discovery Material on the ground that the material is protected as

22   privileged or as attorney work product.

23   **<u>USE AND DESTRUCTION OF PROTECTED MATERIAL</u>**

24       33.    Nothing in this Order will bar Counsel from rendering advice to their clients

25   with respect to this litigation and, in the course thereof, relying upon Protected Material,

26   provided that the contents of the Protected Material must not be disclosed to anyone other

27   than those persons designated within this Order.

28       34.    The restrictions and obligations in this Order will not be deemed to prohibit

discussions of any Protected Material with anyone if that person already has or obtains legitimate possession of that information.

35.     This Order will be without prejudice to the right of any Party to oppose production of any information for lack of relevance or any other ground other than the mere presence of Confidential Information. The existence of this Order must not be used by either Party as a basis for requesting discovery, or objecting to or responding to discovery requests, that is otherwise improper under the Federal Rules of Civil Procedure or any other applicable rules, statutes, or orders of this Court.

36.     If a Receiving Party is served with a subpoena or an order issued in connection with any investigation, litigation, or other proceeding that would compel disclosure of Protected Material, the Receiving Party must so notify the Designating Party in writing (by e-mail, if possible) within five business days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order. The Receiving Party also must promptly notify in writing the entity or Party that caused the subpoena or order to issue that some or all the material covered by the subpoena or order is the subject of this Order. In addition, the Receiving Party must deliver a copy of this Order promptly to the entity or Party in the other investigation or proceeding that caused the subpoena or order to issue. The Party served with the subpoena or order must not produce the Protected Material to the entity or Party in the other investigation or proceeding that caused the subpoena or order to issue until ten business days have elapsed from the date upon which the Receiving Party notified the Designating Party in writing of the subpoena or order. If, within that ten-day period, the Designating Party seeks a protective order from the court where the subpoena or order issued or any other court of competent jurisdiction, the Party served with the subpoena or court order shall not produce any Protected Material before a determination by that court, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material. Nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive

1  from another court.

2      37.     Within sixty days after final disposition of this action, including any and all

3  appeals, Counsel for each Party must return or destroy all Protected Material to the Party

4  that produced the Protected Material, including any copies, excerpts, and summaries of that

5  information, or must destroy same at the option of the Receiving Party, and must purge all

6  such information from all machine-readable media on which it resides. As used in this

7  paragraph, "Protected Material" includes all copies, abstracts, compilations, summaries,

8  and other formats reproducing or capturing any of the Protected Material. Notwithstanding

9  the foregoing, Counsel for each Party may retain all pleadings, briefs, memoranda,

10 motions, and other documents filed with the Court that refer to or incorporate Protected

11 Material, and will continue to be bound by this Order with respect to all such retained

12 information. Further, attorney work product materials that contain Protected Material need

13 not be destroyed, but, if they are not destroyed, the person in possession of the attorney

14 work product will continue to be bound by this Order with respect to all such retained

15 Protected Material. Whether the Protected Material is returned or destroyed, the Receiving

16 Party must submit a written certification to the Producing Party (and, if not the same person

17 or entity, to the Designating Party) by the sixty-day deadline that (1) identifies (by

18 category, where appropriate) all Protected Material that was returned or destroyed and (2)

19 affirms that the Receiving Party has not retained any copies, abstracts, compilations,

20 summaries or any other formats reproducing or capturing any Protected Material, other

21 than those described by this paragraph.

22      38.     Within sixty days after the final disposition of this action, the Court shall

23 return all Protected Material to the Producing Party or destroy such material. Any action

24 by this Court must be preceded by an ex parte motion for an order authorizing the return

25 of all Protected Material to the Producing Party or the destruction thereof.

26      39.     The restrictions and obligations set forth in this Order will not apply to any

27 information that: (a) the Parties agree should not be designated Protected Material; (b) the

28 Parties agree, or the Court rules, is already public knowledge; (c) the Parties agree, or the

Court rules, has become public knowledge other than as a result of disclosure by the Receiving Party, its employees, or its agents in violation of this Order; or (d) has come or will come into the Receiving Party's legitimate knowledge independently of the production by the Designating Party. Prior knowledge must be established by pre-production documentation.

40.     Transmission by email or some other currently utilized method of written transmission is acceptable for all notification purposes within this Order.

41.     This Order may be modified by agreement of the parties, subject to approval by the Court.

42.      The Court may modify the terms and conditions of this Order for good cause, or in the interest of justice, or on its own order at any time in these proceedings. The Parties request that the Court provide them with notice prior to any modification to this Order made by the Court and the content of those modifications, prior to the entry of such an order. To the extent such notice is not possible, the Parties request that the Court allow the Parties fourteen days to become in compliance with any modification to this Order made by the Court.

IT IS SO ORDERED this <u>7th</u> day of <u>August,</u> <u>2023</u>.

_____
Hon. Bernard G. Skomal
United States Magistrate Judge

CONSENTED TO:

Dated: July 25, 2023         By:     */s/ Neal J. Deckant*_____
                                     Neal J. Deckant
                                     **BURSOR & FISHER, P.A.**
                                     1990 North California Blvd., Suite 940
                                     Walnut Creek, CA 94596
                                     Telephone: (925) 300-4455
                                     E-Mail: ndeckant@bursor.com

                                     *Attorneys for Plaintiff*

15

1

2     Dated: July 25, 2023          By:  */s/ Walter F. Brown*
                                         Walter F. Brown
3                                        **PAUL, WEISS, RIFKIND, WHARTON**
4                                        **& GARRISON LLP**
                                         535 Mission Street, 24th Floor
5                                        San Francisco, CA 94105
                                         Telephone: (628) 432-5100
6                                        E-Mail: wbrown@paulweiss.com

7
                                         *Attorney for Defendant*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16

# SIGNATURE CERTIFICATION

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to the parties' respective legal counsel listed above, and that all signatories have authorized placement of their electronic signature on this document.

Dated: July 25, 2023

By: _/s/ Walter F. Brown_
Walter F. Brown
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Tel: (628) 432-5100
Fax: (628) 232-3101
E-Mail: wbrown@paulweiss.com

_Attorney for Defendant_
AMAZON.COM, INC.

17

1

**EXHIBIT A**

2

3  DRICKEY JACKSON, individually and       Case No.: 3:20-cv-02365-WQH-BGS
4  on behalf of all others similarly situated,

5                               Plaintiff,     **ACKNOWLEDGMENT AND**
                                               **AGREEMENT TO BE BOUND**
6        v.                                    **BY STIPULATED PROTECTIVE**
                                               **ORDER**
7  AMAZON.COM, INC.,
8                               Defendant.

9

10       I acknowledge that I have read and understand the Stipulated Protective Order

11  entered in this action on _____, 20____, and agree to

12  abide by its terms and conditions.

13

14

15       Signed this _____ day of _____, 20____.

16

17  _____

18  Signature

19

20  _____

21  Printed Name

22

23  _____

24  Address

25

26  _____

    Telephone Number

27

28                                      19